NOT DESIGNATED FOR PUBLICATION

No. 116,651

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JEREMY L. COLLINS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID J. KAUFMAN, judge. Opinion filed March 9, 2018. Affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., STANDRIDGE, J., and STUTZMAN, S.J.

PER CURIAM:  Jeremy L. Collins appeals following his conviction of aggravated assault of a law enforcement officer. After a thorough review of the record, and for the reasons stated in detail below, we affirm Collins' conviction.

FACTS

On August 29, 2015, the State charged Collins with a single count of aggravated assault of a law enforcement officer. Kenneth Newton of the Sedgwick County Public

1

Defender's Office was appointed to represent Collins. Collins was bound over for trial after a preliminary hearing held on December 3, 2015.

Despite the fact that he was represented by an attorney, Collins filed numerous pro se motions relating to discovery materials, speedy trial issues, bond reduction, suppression of evidence, and various other matters. Collins also filed several motions and letters expressing his dissatisfaction with Newton for failing to pursue the issues presented in his pro se motions and for continuing the case on multiple occasions without his consent.

Collins ultimately filed a motion to proceed pro se. At a hearing on Friday, May 6, 2016, the district court engaged in a detailed colloquy with Collins to verify that he knowingly and voluntarily wanted to waive his right to counsel. Finding Collins understood the consequences of proceeding on his own without counsel, the district court granted Collins' motion to proceed pro se and dismissed Collins' counsel from further representation. After receiving permission to proceed pro se, Collins asked the court to dismiss the case based on his former counsel's failure to obtain approval for the continuances requested because without those days counted against him, the State had exceeded the 150-day statutory period within which it was required to bring him to trial. Specifically, Collins claimed 155 days had passed since his December 3, 2015, preliminary hearing and arraignment, which was 5 days beyond the statutory deadline. The district court directed Collins to file a written motion so that the State would have an opportunity to consider Collins' argument before being required to respond.

The State, however, indicated that it did not need any additional time to respond to Collins' motion to dismiss. More specifically, the State pointed out that the district court had stayed the case for 23 days (March 7 to March 29) in order to have Collins evaluated to determine whether he was competent to stand trial. Although the court ultimately determined Collins was competent to stand trial, the State argued the 23 days in which

the proceedings were stayed are excluded in speedy trial calculations by law; thus, even if none of the continuances requested by defense counsel counted against the 150-day statutory speedy trial deadline, the State still had 18 days before the statutory deadline expired. K.S.A. 2017 Supp. 22-3402(e)(2) (district court may extend time for trial if competency evaluation is pending but if defendant ultimately is found competent, court must schedule trial as soon as practicable and in any event within 90 days of such finding). The State indicated it had been ready to go to trial before the competency evaluation and was ready to go to trial the following business day, which was Monday, May 9, 2016.

Persuaded by the State's argument, the district court rejected Collins' claim that the 150-day statutory deadline had expired. Given the trial currently was set for June 13, 2016, the court asked Collins whether he wanted to move the trial to the following Monday, May 9, 2016, or consent to a continuance, which would be required in order to keep the June 13, 2016 trial setting. Collins responded that he wanted to go to trial on Monday but needed the discovery packet in order to prepare over the weekend. The court set the matter for trial on Monday, May 9, 2016, and ordered the State to deliver the discovery packet to Collins by 1:30 p.m.

On the morning of trial, Collins requested a continuance, claiming he was not prepared. When the district court denied the continuance, Collins requested standby counsel to assist him. The district court also denied this request. The case proceeded to trial with Collins representing himself. The following evidence was presented.

Chad Day, a security officer for Via Christi, testified that he was working at St. Joseph Hospital in Wichita on August 29, 2015. Day reported to the emergency room at around 2:30 a.m. to deal with a disruptive patient who was not willing to stay in his room. Day made contact with the patient, Collins, in a private exam room within the emergency room. According to Day, Collins was "very agitated" and repeatedly ignored Day's

3

commands to stay inside the exam room. Collins ultimately told Day that he wanted to seek treatment at another facility, so Day told Collins he could leave. Collins left his room and began walking down the hallway, continuing to argue with and yell at hospital staff and security. Day escorted Collins to the entryway of the emergency room and instructed Collins to leave the premises. Collins refused to do so and demanded to make a phone call. When Collins eventually started to walk away, Day testified he saw Collins put his right hand in his pocket and pull out a screwdriver with the metal part facing up, which he then put back in his pocket. When Day saw the screwdriver, Day became concerned that Collins might use the screwdriver as a weapon against him.

Wichita Police Officer Alex Bebb testified that he was at the St. Joseph emergency room on an unrelated call in the early morning of August 29, 2015. Bebb observed Collins going in and out of his room, refusing to comply with hospital staff and security requests that he stay in the room. Bebb approached Collins and unsuccessfully attempted to get him to remain in the room. Hospital security ultimately told Collins that he would have to leave the hospital if he did not stay in his room. Collins began walking toward the exit but argued with and yelled at security personnel along the way. Bebb and members of the security staff followed Collins to the emergency room's waiting area, where Collins continued to ignore several commands to leave the property. Bebb saw Collins pull a screwdriver out of his right pocket and then put it back in his pocket. After seeing the screwdriver, Bebb became concerned that Collins might become physically combative and use the screwdriver against him or the hospital staff. As a result, Bebb called for another police officer as back up to assist him. Bebb followed Collins through the lobby and to the parking lot outside. Once in the parking lot, Collins was asked to leave the property several more times. Bebb informed Collins that Collins would be arrested for trespassing if he failed to leave the premises. After Collins still refused to leave, Bebb decided to arrest Collins. As Bebb took a step forward to grab Collins' wrist to place handcuffs on him, Collins pulled away, turned his body from Bebb, and pulled the screwdriver out of his pocket. Concerned that Collins might try to seriously injure

4

him with the screwdriver, Bebb deployed his taser at Collins. According to Bebb, Collins kept trying to get up and come toward him while brandishing the screwdriver in a threatening manner. Bebb and another officer deployed their tasers multiple times before Collins fell to the ground, which allowed the officers to take him into custody.

Collins testified that he was at the hospital to get treatment for his feet but that no one was helping him. Collins said he could not leave the hospital because he was unable to walk. Collins claimed he did not intend to cause a problem or hurt anyone at the hospital but instead was scared and wanted to get away from the hospital because he did not want to go to jail. Collins admitted that he stepped back from Bebb and pulled the screwdriver from his pocket but again explained that he did so out of fear. Collins denied "brandish[ing]" or "display[ing]" the screwdriver to Bebb and testified that he did not intend to stab anyone. Collins testified that if he did pull out the screwdriver, it was because he saw the police and security officers "advancing" on him and he "didn't want to get tackled."

After hearing all of the evidence and instructions from the district court, the jury convicted Collins as charged. The court sentenced Collins to 40 months in prison with a postrelease supervision term of 24 months.

ANALYSIS

On appeal, Collins argues the district court erred by (1) granting defense counsel's requests for continuances over Collins' objection or outside of his presence, (2) denying his request for new counsel, (3) denying his own request to continue trial or to have standby counsel after he elected to proceed pro se, and (4) instructing the jury in certain respects. We address each of these allegations in turn.

5

1. *Continuances*

Collins argues the district court erred by granting Newton's multiple requests to continue the trial setting in this matter because these requests were made either without Collins' consent or outside of his presence.

After a preliminary hearing held on December 3, 2015, Collins was bound over for trial. The district court scheduled the trial for January 11, 2016. The trial date was continued multiple times before it actually commenced on May 9, 2016. During that time, Collins filed numerous pro se motions in which he referenced his statutory and constitutional rights to a speedy trial and complained that Newton had requested and received continuances for trial without his permission or without his presence in the courtroom. On appeal, Collins identifies three continuances that were granted without his permission:

- January 11, 2016 to February 29, 2016 (49 days). The trial was continued at Newton's request. Newton signed a document indicating that he had consulted with Collins about the continuance and that the continuance was to be charged to the defense under K.S.A. 2017 Supp. 22-3402(g).
- February 29, 2016 to March 7, 2016 (7 days). At a hearing on February 26, 2016, Collins complained that Newton had continued the trial outside his presence and against his wishes. Near the conclusion of the hearing, Newton informed the court that he would be requesting a continuance of the February 29 trial date because he had two "must try cases on the list for [that] week." Over Collins' objection, the district court continued the trial until March 7, 2016, noting that Newton would not be able to try two cases at the same time.
- April 11, 2016 to June 13, 2016 (63 days). On April 11, 2016, Newton requested a continuance until June 13, 2016. Once again, Newton signed a document indicating that he had consulted with Collins about the continuance and that the

continuance was to be charged to the defense under K.S.A. 2017 Supp. 22-3402(g). The district court granted the continuance.

a. *February 26 continuance*

Unlike the motions to continue filed by Newton on January 11 and April 11, Collins was present in the courtroom on February 26, 2016, when Newton requested, and the court granted, a request to continue trial from February 29, 2016, to March 7, 2016. Under K.S.A. 22-3401, a district court may grant a continuance "for good cause shown." The court's decision to grant or deny a request for continuance will not be disturbed on appeal absent a showing of an abuse of discretion. *State v. Burnett*, 300 Kan. 419, 436, 329 P.3d 1169 (2014). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the district court, (2) the action is based on an error of law, or (3) the action is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *State v. Rojas-Marceleno*, 295 Kan. 525, 531, 285 P.3d 361 (2012).

At the February 26 hearing, Newton requested to continue the trial scheduled for February 29 because he had two "*must try* cases on the list for [that] week." (Emphasis added.) The district court granted the motion, noting that Newton could not try two cases at once. Collins does not allege that Newton failed to show good cause for the continuance or otherwise demonstrate that the district court's ruling constituted an abuse of discretion. In any event, it is clear that Newton's request for a continuance—because he had two other trials scheduled—was supported by good cause. See K.S.A. 22-3401. As a result, the district court did not abuse its discretion in granting the February 26 continuance.

7

b. *January 11 and April 11 continuances*

Collins claims the district court violated his constitutional right to be present at critical stages of trial when it granted Newton's January 11 and April 11 requests to continue trial, which were both made outside of his presence. A claim asserting violation of a defendant's right to be present at every critical stage of his or her criminal proceeding presents a legal question over which the appellate court exercises unlimited review. *State v. Wright*, 305 Kan. 1176, 1178, 390 P.3d 899 (2017).

In *Wright*, the Kansas Supreme Court clarified its position that a continuance hearing is a critical stage of a criminal trial requiring the defendant's presence. 305 Kan. 1176, Syl. ¶ 1. Thus, a defendant's right to be present is violated when he or she is absent from a hearing at which his or her counsel requested and obtained a continuance without the defendant's knowledge and consent, because the defendant had no opportunity to be heard or to object. 305 Kan. at 1178; see *State v. Dupree*, 304 Kan. 43, Syl. ¶ 2, 371 P.3d 862, *cert. denied* 137 S. Ct. 310 (2016). The court noted that if a continuance is granted in the absence of the defendant, "it is unlikely that there will be a remedy on appeal even if an appellate court later attributes the continuance to the State." *Wright*, 305 Kan. at 1178; see *State v. Brownlee*, 302 Kan. 491, 511, 354 P.3d 525 (2015). The court observed that "if a personal objection from the defendant is going to be more than a hollow gesture, it needs to be heard and adjudicated in the district court." *Wright*, 305 Kan. at 1178.

But the court in *Wright* also recognized the absence of a defendant from a critical hearing or other proceeding—though a constitutional breach—may be excused if the resulting error is harmless. 305 Kan. at 1179; see *State v. Verser*, 299 Kan. 776, Syl. ¶ 4, 326 P.3d 1046 (2014). A court will declare a constitutional error harmless only where the party benefiting from the error persuades the court "beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire

record, *i.e.*, proves there is no reasonable possibility that the error affected the verdict." *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011).

Assuming that Collins had a constitutional right to be present on January 11 and April 11 when defense counsel submitted requests to continue the trial setting, the court erred in granting the requests without Collins present. But this error was harmless. Collins does not allege, and we do not find, any suggestion that the court's error affected the outcome of the trial in light of the entire record. In support of our finding, we note that the court stayed this case to permit Collins to undergo a competency evaluation. Relying on the information in the evaluation indicating that Collins was competent to stand trial, the court lifted the stay 23 days later. Under K.S.A. 2017 Supp. 22-3402(e)(2), the 23-day stay imposed by the court for purposes of obtaining a competency evaluation is not included in the statutory speedy trial calculations. If the defendant ultimately is found competent, the court must schedule the trial as soon as practicable and in any event within 90 days of such finding. K.S.A. 2017 Supp. 22-3402(e)(2). Because the 23-day stay imposed by the court for purposes of obtaining a competency evaluation is not included in the statutory speedy trial calculations, Collins was brought to trial 15 days before the 150-day deadline expired.

But even if the case had not been stayed for those 23 days, there simply is no evidence that the court's error affected the outcome of the trial in light of the entire record; in other words, the State's case would have been no less compelling had it been required to try the case at the time it was stayed for the competency evaluation. At the April 22, 2016 hearing, Collins complained about being excluded from the courtroom when the continuances were granted. In response, the prosecutor claimed the State had been prepared for trial even before the case was taken off the docket for the competency evaluation. The evidence and the legal issues facing the State in proving its case against Collins substantiates the prosecutor's April 22, 2016 claim.

The evidence showed that Collins was asked to leave the hospital due to his disruptive and disagreeable behavior. Collins refused to leave and was escorted out of the hospital by police and security officers, who observed Collins removing a screwdriver from his pocket. When Collins still refused to leave after reaching the parking lot, Officer Bebb attempted to arrest him for trespass by grabbing Collins' wrist. Collins backed up and turned away from Bebb while removing a screwdriver from his pocket. Officers ultimately subdued Collins with their tasers and placed him under arrest. The State charged Collins with aggravated assault of a law enforcement officer, a severity level 6 person felony. Collins was later determined to be competent to stand trial.

As the above recitation of facts demonstrates, this case was not a particularly difficult one for the State from an evidentiary standpoint. The State presented testimony from three witnesses—the hospital security officer and two police officers. These witnesses all identified Collins and testified that they observed him pulling a screwdriver out of his pocket. The State also presented video and photographic evidence from the hospital security system, as well as the screwdriver found in Collins' possession. The State did not need DNA evidence or other forensic science to prove the case against Collins. Collins testified in his own defense, denying that he displayed or brandished the screwdriver and claiming that he was simply trying to get away after seeing police and security advancing on him. The district court instructed the jurors on aggravated assault of a law enforcement officer and defined the term "deadly weapon." During deliberations, the jury asked to view the hospital security video again and was allowed to do so. The jurors reached a verdict in less than one day.

The record reveals a relatively straightforward case in which evidence of Collins' guilt was strong; thus, the prosecutor's statement that the State had been prepared to present its case before the court ordered the competency hearing is supported by the record. For all of the reasons stated above, we find the State has established beyond a

10

reasonable doubt that any violations of Collins' constitutional right to be present to lodge objections to the continuances of the trial amount to harmless error.

2. *New counsel*

Collins argues the district court erred by denying his request for new counsel, which he based on his clear dissatisfaction with Newton's representation.

On February 17, 2016, Collins filed a pro se motion alleging Newton was ineffective. Specifically, Collins complained that Newton had continued the case without his permission in November 2015 (before the preliminary hearing) and asserted that Newton had failed to file motions relating to bond reduction and discovery. As a result, Collins asked the district court to appoint new counsel. At a hearing on the motion, Collins argued that he had to file his own motions because Newton failed to file these motions at his request, Newton failed to provide Collins with evidence in support of the charges against him, and Newton had continued the case outside of Collins' presence and without his consent. Thereafter, the following exchange occurred:

"THE COURT: Well, let me ask you this, Mr. Newton, has the communication broken down to the point where you don't think you can represent him anymore?

"MR. NEWTON: Your Honor, Mr. Collins, has been housed out of county for most of the time that he has been filing these motions. I don't have a problem working with him, but you can see what the level of communication is. And it is what it is, but I'm still willing to work with him.

"THE DEFENDANT: Your Honor—

"MR. NEWTON: But apparently—

"THE DEFENDANT: —is that an insult toward my intelligence?

"THE COURT: No.

"THE DEFENDANT: What did that statement mean?

"THE COURT: Well, that statement is—

"THE DEFENDANT: It is what it is.

11

"THE COURT: That statement means—

"THE DEFENDANT: I'm not dumb.

"THE COURT: —that you're not—

"THE DEFENDANT: I'm intelligent.

"THE COURT: Mr. Collins—

(Interruption by the court deputy.)

"THE COURT: Sir, this is the problem, and the problem is on your end.

"THE DEFENDANT: My problem is with my attorney.

"THE COURT: Your problem is going to be with anybody that represents you, Mr. Collins. I can't appoint a lawyer that is going to be happy—that you're going to be happy with.

"THE DEFENDANT: Someone better than him would make me happy, and I probably wouldn't have a problem if I could get—

"THE COURT: You know what, here's the thing, Mr. Collins, is that if I grant this motion I know what's going to happen. You're going to be on my docket in four weeks with another motion to fire the other lawyer for the same reasons.

"THE DEFENDANT: No.

"THE COURT: Sir, you're taking insults where none were intended. You're—

"THE DEFENDANT: I'm not happy with my counsel's representation of me. He's not properly representing me.

"THE COURT: Well, you're—

"THE DEFENDANT: And I know my rights. I read the law.

"THE COURT: Well, your complaint is that he's not properly representing you because he's not filing motions that have no legal merit.

"THE DEFENDANT: Well, how do I know this? He's not conveying that to me.

"THE COURT: Well, you haven't given me any reason to relieve Mr. Newton as counsel and so I'm going to deny the motion.

"THE DEFENDANT: All right. So I just file another one until I get satisfaction out of this?

"THE COURT: Well, you can file as many motions as you want to fire counsel, but you're going to have to come up with better reasons than this.

"THE DEFENDANT: All right."

12

On April 4, 2016, Collins filed another pro se motion alleging ineffective assistance of counsel. Collins argued that he could not trust Newton for a variety of reasons and again asked the district court to appoint new counsel. At a hearing on that motion, the court asked Newton whether he believed effective communication with Collins was still possible. Newton replied that he believed it was. Collins disagreed, complaining the case had been continued four times without his consent and in violation of his speedy trial rights. Noting that it had not yet been 150 days since arraignment, the district court concluded there was no speedy trial violation, even if all of the continuances were counted against the State. Collins then reiterated his previous argument that Newton was not pursuing any of his pro se motions and stated that he would "rather just go ahead and do it myself, go ahead and go pro se." After further discussion regarding discovery, continuances, and speedy trial issues, the court informed Collins that none of the pro se motions had any legal merit. The judge stated,

> "Part of the problem here, Mr. Collins, is that you have in your head opinions that just simply can't be moved and you will not hear anything that your lawyer has to say or that I have to say that is inconsistent with the preconceived notions that you have about your case. And that is preventing you from hearing good advice from your lawyer; it's preventing you from hearing good advice from me."

Following additional discussion regarding Collins' desire to represent himself, the court continued the case in order to allow Collins to file a written motion to proceed pro se. A hearing on the motion was held on May 6, 2016. At this hearing, the court engaged in a detailed discussion with Collins about the risks involved in pro se representation. After finding that Collins was knowingly and voluntarily waiving his right to counsel, the court ultimately granted Collins' request to represent himself.

Collins argues the district court erred in denying his motion for new counsel. Collins claims the court ignored the obvious conflicts and irreconcilable disagreements he had with Newton, which essentially resulted in him having no representation. Collins

asserts he was prejudiced by the court's failure to appoint new counsel, suggesting that he only chose to proceed pro se because he was denied the effective assistance of counsel by Newton.

Under the Sixth Amendment to the United States Constitution, Collins had a right to effective assistance of counsel during all critical stages of his criminal proceeding. And this carries "a correlative right to representation that is unimpaired by conflicts of interest or divided loyalties." *State v. Pfannenstiel*, 302 Kan. 747, 758, 357 P.3d 877 (2015). The district court is charged with ensuring this right is honored, so when there is an articulated statement of attorney dissatisfaction, it is the district court's responsibility to inquire. See 302 Kan. at 760. Collins' ineffective assistance of counsel motions constituted an articulated statement of attorney dissatisfaction, triggering the district court's duty to inquire. Whether the district court adequately discharged this duty is reviewed for an abuse of discretion. See 302 Kan. at 760-61. A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the district court; (2) it is based on an error of law; or (3) it is based on an error of fact. *Marshall*, 303 Kan. at 445.

> "The duty of inquiry may lead a district court to abuse its discretion in three ways: (1) When the district court becomes aware of a potential conflict of interest but fails to inquire at all, which is a decision based on an error of law—the error being the district court's failure to fulfill a legal duty; (2) when the court is aware of the conflict, proceeds to investigate, but fails to conduct an appropriate inquiry; and (3) when the court, after being aware of the conflict, conducts an appropriate inquiry into the defendant's expression of dissatisfaction with counsel but commits an abuse of discretion in deciding whether to substitute counsel." *State v. McDaniel*, 306 Kan. 595, 606-07, 395 P.3d 429 (2017) (citing *Pfannenstiel*, 302 Kan. at 760-62).

Here, Collins suggests that the district court abused its discretion by failing to conduct an appropriate inquiry into the alleged conflict of interest and by denying his request for new counsel based on this conflict.

Although an indigent criminal defendant has a constitutional right to the assistance of counsel, a defendant cannot compel the district court to appoint the counsel of defendant's choice. To warrant substitute counsel, a defendant must show "justifiable dissatisfaction" with his or her appointed counsel. *State v. Bryant*, 285 Kan. 970, 986-87, 179 P.3d 1122 (2008). Justifiable dissatisfaction may be demonstrated by showing a conflict of interest, an irreconcilable disagreement, or a complete breakdown in communication between counsel and the defendant. "'[A]s long as the trial court has a reasonable basis for believing the attorney-client relationship has not deteriorated to a point where appointed counsel can no longer give effective aid in the presentation of a defense, the court is justified in refusing to appoint new counsel.'" 285 Kan. at 986-87.

Contrary to Collins' argument, the record reflects that the district court allowed Collins to fully express his complaints against Newton and conducted an appropriate inquiry into these complaints. At the February hearing, the court gave Collins the opportunity to "make whatever argument" he wished to make. When Collins claimed that Newton was not pursuing various motions, the court asked Collins for specific examples. After hearing Collins' argument, the court stated that it had reviewed the referenced motions and noted that some of the relief requested was duplicative of orders already made by the court. As the court continued to inquire into Collins' complaints, it appears the court determined that many of his grievances resulted from a misunderstanding of the preliminary hearing and arraignment processes.

Regarding Collins' complaint about the continuances filed by Newton, the court explained to Collins that speedy trial rights were meant to require the State to bring a case to trial within a certain time period and the right to a speedy trial was not a defense to the

15

crimes charged. The court also noted that continuances by the defense were often necessary in order to allow additional time to prepare for trial. Nevertheless, Collins insisted that Newton had had plenty of time to prepare for trial and again argued that Newton had not filed any of Collins' pro se motions. At this point, the court told Collins that his pro se motions lacked merit.

At the April hearing, the court again allowed Collins the opportunity to present his ineffective assistance of counsel argument relating to continuances and speedy trial violations. The court engaged in a lengthy discussion with Collins and explained that there had been no speedy trial violation. At that time, Collins expressed his desire to represent himself. The court reiterated that it had reviewed all of Collins' pro se motions and did not find them to have any legal merit. The court expressed its belief that Newton had not provided ineffective representation. Nevertheless, Collins insisted that he wanted to represent himself. At both the February and April hearings, Newton advised the court that he believed effective communication with Collins was still possible.

Based on our review of the record, we find Collins' answers to the court's questions indicate that he lacked an understanding of certain aspects of the law and was upset because Newton chose not to file or otherwise pursue meritless motions. Decisions on what trial motions should be made are the exclusive province of counsel after consultation with his or her client. *Bledsoe v. State*, 283 Kan. 81, 92, 150 P.3d 868 (2007). The fact that Collins disagreed with certain procedural decisions made by Newton, including which motions to file and when to continue the case, does not constitute "justifiable dissatisfaction" and did not create a conflict of interest, an irreconcilable disagreement, or a complete breakdown in communication. Based on Collins' statements, the court had a reasonable basis to conclude that Newton could provide effective representation to Collins. Under the facts present here, it cannot be said that the district court failed to conduct a sufficient inquiry as to why Collins wanted new counsel or that the district court acted unreasonably by denying Collins' motion.

16

Accordingly, we conclude the district court did not abuse its discretion in denying Collins' request for new counsel.

3. *Pro se request to continue trial and to appoint standby counsel*

Collins argues the district court erred in denying his pro se request for continuance and for standby counsel on the first day of trial. Collins claims that these errors violated his due process rights, including the right to prepare a defense.

As previously discussed, the district court granted Collins' request to proceed pro se at a hearing on May 6. Before granting this request, the district court engaged in a lengthy discussion with Collins, warning Collins of the risks associated with self-representation. At this same hearing, Collins complained that his speedy trial rights had been violated due to Newton's trial continuances. The district court instructed Collins to file a written motion in order to allow the State to have time to prepare a response to the motion. The court explained to Collins that the speedy trial issue would be set on a docket once the motion was filed and the State had the opportunity to respond. Although the current trial setting was June 13, the State indicated to the court that the State could be ready to try the case on the following Monday, May 9. Collins again argued that the case should be dismissed on speedy trial grounds; the court advised Collins that if he wanted to make that argument, the State was entitled to notice and an opportunity to file a written response, making it impossible to start trial on May 9. The prosecutor disagreed that Collins' speedy trial rights had been violated, noting that the State had never requested a continuance and that the case had been off docket for over 20 days for the competency evaluation. The prosecutor concluded, "If [Collins] wants a trial on Monday, we'll make that happen. If he's asking for a continuance for a later date, then that's up to him, but right now it's set for June 13th."

17

The district court was persuaded by the prosecutor's calculations. Thus, the court explained to Collins that because the time spent off docket did not count, the applicable 150-day statutory speedy trial time period had not been exceeded. The court then asked Collins if he wanted to go to trial on Monday or consent to the June 13 trial setting, and Collins replied, "Yeah, let's go to trial." Given Collins' response, the prosecutor advised the court that he had provided all discovery to Newton but would provide the material directly to Collins later that afternoon.

When the parties appeared on the morning of trial, Collins informed the court that he was "not prepared," claiming that the prosecutor had "suggested that we push for trial" and stating that he wanted a continuance because he had motions to file relating to new evidence he had received from the prosecutor's office. After further questioning by the court, Collins explained that he wanted to subpoena his medical records and to subpoena witnesses to testify as to why he was in the hospital. Although the prosecutor did not formally object to the requested continuance, she noted that Collins had demanded a speedy trial on the previous Friday so the State had "dropped everything" to ensure that witnesses would be available and the case would be ready for trial. The prosecutor was unaware of any new evidence and thus could not fathom any type of meritorious motion that Collins would need to file that would establish good cause for granting a continuance. The district court ultimately denied Collins' request, noting that Collins had pushed for an earlier trial date and was "playing both sides of the fence" and disrupting the flow of trial.

Following the court's ruling, Collins requested standby counsel, complaining that he only chose to proceed pro se because Newton would not do anything he wanted and it was the only way to get his motions heard. Collins again argued that the State had "drop[ped] new evidence." The prosecutor again responded that no new evidence was given to Collins and that everything provided to Collins on Friday had been previously provided to Newton. Collins reiterated that he still wanted to proceed pro se but wanted

18

"somebody to standby in case" because he was not familiar with the trial procedures. The court denied Collins' request, noting that Collins had been thoroughly advised of the risks of self-representation. The court held that "no standby counsel can be brought in today and be prepared to assist you. That would cause a delay in the case. And, again, I had to consider that manipulation of the system by you, again."

a. *Continuance*

Under K.S.A. 22-3401, a district court may grant a continuance "for good cause shown." Generally, the decision whether to continue a case lies within the sound discretion of the district court, but where a defendant claims the denial of the continuance interfered with his or her ability to present a defense, an appellate court reviews the question de novo. *State v. Robinson*, 303 Kan. 11, Syl. ¶ 5, 363 P.3d 875 (2015), *disapproved on other grounds by State v. Cheever*, 306 Kan. 760, 402 P.3d 1126 (2017).

Collins argues generally that the district court's refusal to allow a continuance deprived him of his constitutional right to present a defense because he did not have sufficient time to prepare for trial. Collins argued below that a continuance was necessary because he had only recently received discovery and he needed to subpoena witnesses to explain why he was in the hospital. When a request for a continuance has been made in order to secure attendance of a witness at trial, relevant factors for the court to consider include:  the possible prejudice to the parties, the diligence or lack thereof in attempting to secure the attendance of the witness, the materiality and importance of the probable testimony, and the probability of the witness' appearance at a later date if the continuance is granted. *State v. Carter*, 284 Kan. 312, 319, 160 P.3d 457 (2007); *State v. Lee*, 45 Kan. App. 2d 1001, 1012, 257 P.3d 799 (2011). Collins offers no analysis of these factors; instead, he makes only a general argument that the district court's ruling deprived him of his right to present a defense. Collins has failed to properly brief this issue. See *State v.*

*Sprague*, 303 Kan. 418, 425, 362 P.3d 828 (2015) (point raised incidentally in brief and not argued therein is deemed abandoned).

In any event, it is difficult to see how Collins could argue that he was prejudiced by the court's ruling when he voluntarily elected to proceed pro se and chose to move up the trial date by several weeks. The district court spoke with Collins at length about the perils of self-representation and the challenges he would face with respect to conducting discovery and subpoenaing witnesses. Despite these warnings, Collins made a knowing and voluntary waiver of his right to counsel and chose to move the trial date from June 13 to May 9, only three days after the court granted his motion to proceed pro se. Collins should not be permitted to complain of an error of his own creation. See *Verser*, 299 Kan. at 784 (litigant may not invite error and then complain of that error on appeal).

Finally, Collins failed to explain how the witnesses he wanted to subpoena would have been helpful to his case, as testimony regarding the reasons for his hospitalization would not have had any bearing on his innocence or guilt of the charged crime. There is no indication in the record that Collins was claiming a mental disease or defect or any other defense that made the reason for his hospitalization relevant, and Collins does not otherwise identify any specific testimony or evidence that would have affected the outcome of trial had the continuance been granted. "Mere speculation that with more time something favorable may happen for the defendant does not constitute good cause." *State v. Beaman*, 295 Kan. 853, 864, 286 P.3d 876 (2012).

The district court did not err by denying Collins' request for a continuance.

b. *Standby counsel*

The appointment of standby counsel for a pro se litigant rests within the sound discretion of the district court. *State v. Buckland*, 245 Kan. 132, 139, 777 P.2d 745

(1989). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the district court; (2) it is based on an error of law; or (3) it is based on an error of fact. *Marshall*, 303 Kan. at 445.

A pro se defendant does not have a right to standby counsel. See *State v. Holmes*, 278 Kan. 603, 620, 102 P.3d 406 (2004) ("While a party has a right to represent himself or herself or to be represented by counsel, he or she does not have the right to a hybrid representation."); *State v. Ames*, 222 Kan. 88, 100, 563 P.2d 1034 (1977) (defendant has "right to either appointed counsel or pro se representation, but both rights cannot simultaneously be asserted"). A criminal defendant's decision to proceed pro se "is not irrevocable and may be rescinded absent demonstrated bad faith or a serious disruption of the judicial process." *State v. Rassel*, No. 107,336, 2013 WL 1688930, at * 3 (Kan. App. 2013) (unpublished opinion). Here, Collins did not rescind his decision to proceed pro se; instead, he wanted standby counsel to assist him with trial procedures. In denying Collins' request, the district court discussed Collins' earlier complaints relating to trial continuances and his speedy trial rights, as well as Collins' insistence on representing himself and moving up the trial date by several weeks. The court concluded that granting Collins' request would result in a delay in the trial and would allow him to "manipulat[e] . . . the system."

A review of the record indicates that the district court went to great lengths to ensure that Collins was aware of the risks inherent in representing himself at trial. See *State v. Collins*, 257 Kan. 408, 413, 893 P.2d 217 (1995) (valid waiver of right to counsel requires district court to advise defendant on the record of dangers and disadvantages of self-representation so that defendant can make the choice "'with eyes open'"). Given Collins' actions throughout the case, his change in position on the morning of trial did not warrant a delay of trial in order to allow the district court to appoint counsel to assist Collins. The district court did not abuse its discretion in denying Collins' request for

21

standby counsel. See *State v. Snodgrass*, 252 Kan. 253, 264, 843 P.2d 720 (1992) ("Defendant cannot complain of the consequences of his own actions or inactions.").

4. *Jury instructions*

Collins argues the district court erred by instructing the jury in two respects. First, Collins contends the court wrongly defined the term "knowingly" in its instruction setting forth the elements of aggravated assault of a law enforcement officer. Second, Collins alleges the court should have instructed the jury on the lesser included offense of assault of a law enforcement officer.

Collins admits that he did not object to the district court's instruction defining the term knowingly and that he did not request a lesser included offense instruction. Thus, we may only consider whether the district court committed clear error. See K.S.A. 2017 Supp. 22-3414(3). We use a two-step process in determining whether the challenged jury instruction is clearly erroneous. See *State v. Smyser*, 297 Kan. 199, 204, 299 P.3d 309 (2013).

When determining whether an instruction was clearly erroneous, the appellate court first determines whether there was any error at all. In making that determination, the appellate court must consider whether the subject instruction was legally and factually appropriate, employing an unlimited review of the entire record. If the appellate court determines that the district court erred in giving a challenged instruction, then the analysis moves to a reversibility inquiry, wherein the court assesses whether it is firmly convinced that the jury would have reached a different verdict had the instruction error not occurred. Collins, as the party claiming error, maintains the burden of establishing the degree of prejudice necessary for reversal. See *State v. Williams*, 295 Kan. 506, Syl. ¶¶ 4-5, 286 P.3d 195 (2012).

a. *Definition of knowingly*

K.S.A. 2017 Supp. 21-5412 required the State in this case to prove an assault, as defined in subsection (a), of a law enforcement officer, as provided in subsection (c)(1), committed with a deadly weapon, as provided in subsection (d)(1). The assault is defined as "*knowingly* placing another person in reasonable apprehension of immediate bodily harm." (Emphasis added.) K.S.A. 2017 Supp. 21-5412(a). At issue here is whether the district court properly defined the term "knowingly" for the jury. To that end, K.S.A. 2017 Supp. 21-5202 defines the culpable mental states applied under Kansas criminal statutes and provides, in relevant part:

> "(i) A person acts 'knowingly,' or 'with knowledge,' with respect to the nature of such person's conduct or to circumstances surrounding such person's conduct when such person is aware of the nature of such person's conduct or that the circumstances exist. A person acts 'knowingly,' or 'with knowledge,' with respect to a result of such person's conduct when such person is aware that such person's conduct is reasonably certain to cause the result. All crimes defined in this code in which the mental culpability requirement is expressed as 'knowingly,' 'known,' or 'with knowledge' are general intent crimes."

PIK Crim. 4th 52.010 (2015 Supp.) outlines the definition of "knowingly" as a culpable mental state and provides the district court with three options for defining the term, depending upon which is appropriate for the crime charged. The court may instruct the jury that "[a] defendant acts knowingly when the defendant is aware":

- "• of the nature of (his) (her) conduct that the State complains about.
  or
- "• of the circumstances in which (he) (she) was acting.
  or
- "• that (his) (her) conduct was reasonably certain to cause the result complained about by the State." PIK Crim. 4th 52.010 (2015 Supp.).

23

Here, the district court instructed the jury under the first option that "[a] defendant acts knowingly when the defendant is aware of the nature of his conduct the State complains about." Collins argues that this definition was legally inappropriate and only the third option was legally proper here.

The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State v. Jordan*, 303 Kan. 1017, 1019, 370 P.3d 417 (2016). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, an appellate court should not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. Where there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the Legislature's intent. *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016).

As noted, the criminal intent required for the assault element of the charged crime is "knowingly." K.S.A. 2017 Supp. 21-5412(a) (defining assault as "knowingly placing another person in reasonable apprehension of immediate bodily harm"). Thus, based on the instruction the court provided to the jury, the State was required to prove Collins was aware of the nature of his conduct that the State complains about. The nature of the conduct about which the State complained was aggravated assault of a law enforcement officer, the elements of which are placing a law enforcement officer in reasonable apprehension of immediate bodily harm. Therefore, the State had to prove Collins was aware that his conduct placed at least one of the officers in reasonable apprehension of immediate bodily harm.

But Collins claims the instruction provided to the jury here was legally inappropriate because the aggravated assault statute requires the State to prove that

24

Collins was aware of a certain result: that the law enforcement officers were placed in reasonable apprehension of immediate bodily harm. Thus, Collins argues the only legally appropriate option under PIK Crim. 4th 52.010 (2015 Supp.) was the third one, which would have instructed the jury that the State had to prove Collins was aware his conduct was reasonably certain to cause the result complained about by the State.

We find Collins' argument raises a distinction that makes no difference. Given the instruction provided and the jury verdict finding Collins guilty of the crime, the jury had to have found Collins was aware that pulling the screwdriver out of his pocket placed a law enforcement officer in reasonable apprehension of immediate bodily harm. And, in fact, both of the law enforcement officers testified that the conduct in which Collins engaged (pulling the screwdriver out of his pocket) placed them in apprehension of immediate bodily harm. Based on the facts presented and the applicable law in this case, both the first and third options set forth in PIK Crim. 4th 52.010 (2015 Supp.) to define knowingly would have been legally appropriate instructions here:

Option 1: Collins was aware that his conduct placed a law enforcement officer in reasonable apprehension of immediate bodily harm.

Option 3: Collins was aware that his conduct was reasonably certain to cause a law enforcement officer to be placed in reasonable apprehension of immediate bodily harm.

The district court did not err in defining the term "knowingly."

b. *Lesser included offense*

Collins argues the district court erred by failing to sua sponte instruct the jury regarding the lesser included offense of simple assault of a law enforcement officer.

25

There is no question that simple assault of a law enforcement officer is a legally appropriate lesser included offense of aggravated assault of a law enforcement officer. See *State v. Torrance*, 22 Kan. App. 2d 721, 728-29, 922 P.2d 1109 (1996). But even when an offense includes a lesser included crime, failure to instruct on the lesser included crime is erroneous only if the instruction would have been factually appropriate under K.S.A. 2017 Supp. 22-3414(3); see *State v. Molina*, 299 Kan. 651, 661, 325 P.3d 1142 (2014).

"In cases where there is some evidence which would reasonably justify a conviction of some lesser included crime . . . the judge shall instruct the jury as to the crime charged and any such lesser included crime." K.S.A. 2017 Supp. 22-3414(3). The judge's duty to instruct applies even if the evidence is weak, inconclusive, and consists solely of the defendant's own testimony. *State v. Rutter*, 252 Kan. 739, Syl. ¶ 2, 850 P.2d 899 (1993). Therefore, when evaluating whether a lesser included instruction is factually appropriate in an individual case, the standard of review is whether "after a review of all the evidence viewed in the light most favorable to the prosecution, we are convinced that a rational factfinder could have found the defendant guilty of the lesser crime." *State v. Fisher*, 304 Kan. 242, 258, 373 P.3d 781 (2016).

In Kansas, the offense of simple assault is defined by statute as "knowingly placing another person in reasonable apprehension of immediate bodily harm." K.S.A. 2017 Supp. 21-5412(a). Relevant to the issue presented by Collins on appeal, aggravated assault is simple assault committed with a deadly weapon. K.S.A. 2017 Supp. 21-5412(b)(1). Here, the district court instructed the jury that a deadly weapon

> "is an instrument which, from the manner in which it is used, is calculated or likely to produce death or [serious] bodily injury. An object can be a deadly weapon if the user intended to convince a person that it is a deadly weapon and the person reasonably believed it to be a deadly weapon."

26

See PIK Crim. 4th 54.280 (2016 Supp.).

Collins argues that a simple assault instruction was factually appropriate given his testimony that he "'stepped back' from the officer" and "did not 'display' the screwdriver to the officer or go 'after' anyone." Based on this evidence, Collins argues that he did not use the screwdriver in a manner that would communicate that it was a deadly weapon.

We use a subjective analysis to determine whether an object constitutes a deadly weapon. Thus, an item can be a deadly weapon if the intended victim believed it could cause death or serious bodily harm, and if the user used it in such a way as to communicate to the victim an apparent ability to do bodily harm. *State v. Graham*, 27 Kan. App. 2d 603, 606-07, 6 P.3d 928 (2000).

Bebb testified that after seeing Collins pull out a screwdriver from his pocket, he became concerned that Collins might use the screwdriver against him or the hospital staff and called for another officer to assist him. Based on Bebb's training and experience, he was later worried by Collins' body position when attempting to handcuff him. Bebb stated that Collins "kind of pulled away from me, began to blade his body away from me. And at that point is when I saw the screwdriver come out of his pocket again." According to Bebb, Collins "kind of turned his body away from me as to try to conceal. It's a common threat indictor to conceal drawing a weapon or something like that." Bebb described Collins' body language as "a common pre-attack indicator." Bebb testified that when he saw Collins turn away from him and pull out the screwdriver, he deployed his taser due to concern that Collins might try to seriously injure him. Noting that a person with a knife or blunt object can cover 21 feet in three seconds, Bebb stated that he tried to create some distance between himself and Collins in the event that his taser was not effective. Bebb specifically testified that Collins placed him in reasonable apprehension of immediate bodily harm and that he believed the screwdriver was a deadly weapon based on the manner in which it was used by Collins.

27

Bebb's testimony reflects his clear belief that the screwdriver could have caused death or serious harm and that Collins used it in such a way as to communicate an apparent ability to inflict bodily harm. See *Graham*, 27 Kan. App. 2d at 606-07. After review of all the evidence viewed in the light most favorable to the prosecution, a rational fact-finder could not have found Collins guilty of simple assault. See *Fisher*, 304 Kan. at 258. As a result, the district court's failure to give the lesser included instruction was not error. In the absence of any error, there is no need to determine whether the error affected the trial's outcome.

Affirmed.

* * *

STUTZMAN, J., concurring: I concur with the majority's thorough analysis in all respects but one. I believe the reasoning of our Supreme Court in *State v. Hobbs,* 301 Kan. 203, Syl., 340 P.3d 1179 (2015), required the district court to instruct the jury on the meaning of "knowingly" using the third option listed in PIK Crim. 4th 52.010 (2015 Supp.): "A defendant acts knowingly when the defendant is aware that [his] conduct was reasonably certain to cause the result complained about by the State."

In *Hobbs* the Supreme Court reviewed the claim, first made to a panel of this court, that there was insufficient evidence at trial to support Hobbs' conviction for aggravated battery. Before reviewing the sufficiency of the evidence, the court first analyzed the required proof. The court concluded: "'knowingly,' as used in K.S.A. 2011 Supp. 21-5413(b)(1)(A), means that the accused acted when he or she was aware that his or her conduct was reasonably certain to cause the result." 301 Kan. at 211.

K.S.A. 2017 Supp. 21-5413(b)(1)(A) defines aggravated battery, Hobbs' crime of conviction, to be "*[k]nowingly causing* great bodily harm to another person." (Emphasis

added). Aggravated assault of a law enforcement officer, Collins' crime of conviction, requires, at its core, proof of an assault, which is "*knowingly placing* another person in reasonable apprehension of immediate bodily harm." (Emphasis added) K.S.A. 2017 Supp. 21-5412(a). For the purpose of choosing among the PIK definitions of "knowing," there is no analytical space between "knowingly causing" as used in aggravated battery, and "knowingly placing" as used in aggravated assault. Accordingly, the Supreme Court's direction in *Hobbs* to use the third result-focused option for aggravated battery applies equally to aggravated assault of a law enforcement officer, and the instruction given by the district court here was legally inappropriate.

Notwithstanding the error in instruction, Collins shows no reason to believe the verdict would have been different had the jury been properly instructed on this culpable mental state. Collins testified he was scared and admitted pulling out the screwdriver but denied brandishing it. He said if he did pull it out it was because he saw the officers "advancing" on him and "didn't want to get tackled." In practical terms, therefore, Collins wanted to place the officers in apprehension of harm so they would back off, because he was scared, and a jury could very reasonably find Collins knew his action was "reasonably certain to cause" that result.

"The party claiming a clearly erroneous instruction maintains the burden to establish the degree of prejudice necessary for reversal." *State v. Williams*, 295 Kan. 506, Syl. ¶ 5, 286 P.3d 195 (2012). Since Collins fails to establish that prejudice, I concur with the result reached by the majority.

29