(6 P.3d 928)

No. 82,819

STATE OF KANSAS, *Appellee,* v. LEO D. GRAHAM, JR., *Appellant.*

Opinion filed June 9, 2000.

*Niki Christopher,* assistant appellate defender, *Steven R. Zinn,* deputy appellate defender, and *Jessica R. Kunen,* chief appellate defender, for appellant.

*Charles Reimer* and *David Lowden,* assistant district attorneys, *Nola Foulston,* district attorney, and *Carla J. Stovall,* attorney general, for appellee.

Before RULON, P.J., GREEN, J., and WAHL, S.J.

GREEN, J.: Leo D. Graham appeals his convictions of three counts of robbery and one count of aggravated assault. On appeal, Graham argues (1) that the evidence was insufficient to support his robbery convictions because any touching that may have occurred during the incidents was improperly characterized as force;

(2) that the evidence was insufficient to support his aggravated assault conviction because gasoline was improperly characterized as a deadly weapon; (3) that if the evidence was sufficient to support his convictions, his conviction for aggravated assault is multiplicitous with one of his robbery convictions; and (4) that the trial court abused its discretion in denying him a sentencing departure. We disagree and affirm in part and dismiss in part.

On February 17, 1998, Graham entered a north Wichita convenience store and asked the clerk for change. When the clerk opened the cash register, Graham reached into the drawer and took a $20 bill. The clerk jammed her finger in the drawer when she tried to close it. The clerk testified that Graham pushed her hand when he was taking the money.

The next day, Graham went to another convenience store and again asked the clerk for change. When the clerk opened the cash drawer, Graham jumped onto the counter, pushed the clerk away, and took approximately $40 from the drawer.

Several days later, Graham went to a third convenience store and gave the clerk 45 cents so that he could fill a gas can. After pumping only 35 cents worth of gas into the can, Graham returned to the store. Thinking that Graham wanted a refund, the clerk opened the cash drawer. Graham then lunged over the counter, made physical contact with the clerk, and grabbed $20 from the register. As Graham was leaving the store, he fell down by the door, and the clerk approached him. Graham walked away with the gas can while the clerk trailed several feet behind. At some point, Graham turned around and said, "I'm going to throw gasoline on you." The clerk felt threatened because he believed gasoline could harm him. As the clerk turned to tell incoming customers that the store was closed, Graham ran away.

Graham was initially charged with three counts of robbery. The State later added a charge of aggravated assault with a deadly weapon—gasoline. At his bench trial, Graham testified that he took the money in all three incidents but denied using force. The trial court found Graham guilty as charged.

*Sufficiency of the Evidence—Robbery Convictions*

Graham's first argument on appeal is that the evidence is not sufficient to support his robbery convictions. Specifically, Graham contends any touching which may have occurred during the incidents was improperly characterized as force.

When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Johnson*, 266 Kan. 322, 326, 970 P.2d 990 (1998).

Graham was convicted of three counts of robbery. Robbery is statutorily defined as "the taking of property from the person or presence of another by force or by threat of bodily harm to any person." K.S.A. 21-3426. While many Kansas appellate court cases address when the force or threat must occur to constitute robbery, few, if any, define what degree of violence constitutes "force." Cases which incidentally address the issue, however, are insightful.

In *State v. Aldershof*, 220 Kan. 798, 556 P.2d 371 (1976), the court addressed whether the taking of tavern patrons' purses during a power outage constituted robbery. The court held that the offense was, at most, theft because no force or threat was used in the taking. The court declared that "[r]obbery is not committed where the thief has gained peaceable possession of the property." 220 Kan. 798, Syl. ¶ 3. Conversely, theft is not committed where the thief has used force to gain possession of the property.

*Aldershof* was relied upon in *State v. McKinney*, 265 Kan. 104, 113-14, 961 P.2d 1 (1998). In *McKinney*, the defendant snatched a bank patron's purse. The victim testified that the defendant pushed her up against a door when he grabbed her purse. The defendant denied pushing the victim and argued that his conduct amounted to mere theft. The *McKinney* court disagreed and held that the trial court did not err in refusing to instruct on the lesser included offense of theft. 265 Kan. 104, Syl. ¶ 6.

Here, Graham's conduct is analogous to that addressed in *McKinney*. The three convenience store clerks testified that Graham

pushed them. The clerk in the first robbery testified that Graham pushed her arm away from the register. Moreover, this clerk suffered an injury to her finger when she and Graham struggled. The clerk in the second robbery testified that he was pushed when Graham lunged toward the cash drawer. The videotape of this incident shows Graham suddenly jumping onto the counter, lunging toward the clerk with an outstretched arm, and pushing the clerk away from the register. The clerk in the third robbery also testified that Graham pushed him. The video surveillance tape shows Graham lunging over the counter and locking hands with the clerk, before reaching into the cash drawer.

It cannot be said that Graham gained peaceable possession of the money from the cash drawers. In each of the incidents, Graham abruptly lunged toward the clerks and the cash drawers, made physical contact with the clerks, and contemporaneously removed money from the register. We find that in each of these incidents Graham effectuated the takings through use of force. As a result, we find that Graham's robbery convictions are supported by sufficient evidence.

*Sufficiency of the Evidence—Aggravated Assault Conviction*

Graham also contends that his aggravated assault conviction is not supported by sufficient evidence. Graham was convicted of aggravated assault for threatening to throw gasoline on one of the convenience store clerks. Aggravated assault is defined, in part, as intentionally placing another person in reasonable apprehension of immediate bodily harm committed with a deadly weapon. K.S.A. 21-3410(a). On appeal, Graham argues that the gasoline was improperly characterized as a deadly weapon.

The law in Kansas is clear that an object can constitute a "dangerous weapon" even if it is absolutely harmless. Our Supreme Court has adopted a subjective analysis for determining whether an assault was committed with a deadly weapon. In *State v. Deutscher*, 225 Kan. 265, 589 P.2d 620 (1979), the defendant was convicted of aggravated assault on a law enforcement officer. The evidence supported the defendant's claim that he pointed an unloaded gun at the officer. The court held that "an unloaded revolver

which is pointed in such a manner as to communicate to the person threatened an apparent ability to fire a shot and thus do bodily harm is a deadly weapon within the meaning expressed by the legislature in the assault statutes." 225 Kan. at 270-71. See *State v. Colbert*, 244 Kan. 422, 425-26, 769 P.2d 1168 (1989) (holding that a defective, inoperative gun was a dangerous weapon because the defendant intended that the victim believe the gun could inflict bodily harm and because the victim believed it could inflict bodily harm); *State v. Childers*, 16 Kan. App. 2d 605, 613, 830 P.2d 50 (1991), *rev. denied* 250 Kan. 806 (1992) (holding that under the subjective test a water pistol constituted a dangerous weapon).

The instant case is the first in Kansas to address whether gasoline constitutes a dangerous weapon. Cases from other jurisdictions using the objective test, however, have found that gasoline when used in a particular manner constitutes a dangerous weapon. See *State v. Hales*, 344 N.C. 419, 426, 474 S.E.2d 328 (1996) ("The evidence clearly support[ed] a finding that the gasoline and fire were used in combination as a deadly weapon."); *State v. Cockerham*, 129 N.C. App. 221, 226, 497 S.E.2d 831 (1998) ("[G]asoline doused on [the clerk], although never ignited, can also be considered a 'dangerous weapon' because a reasonable inference could be drawn that defendant planned to ignite that gasoline with the matches found on the floor of the store."); *Rice v. State*, 771 S.W.2d 599, 600 (Tex. App. 1989) ("The evidence was clearly sufficient to show that the flammable liquid, the gasoline, was in the manner of its use, a deadly weapon.").

Here, under a subjective analysis, gasoline constitutes a dangerous weapon. The evidence shows that Graham threatened to use gasoline in a manner that communicated an apparent ability to inflict bodily harm. See *Deutscher*, 225 Kan. at 270-71. Moreover, the clerk reasonably believed bodily injury could occur if Graham threw gasoline on him. The clerk testified that he was threatened by Graham's statement, because he thought gasoline could cause eye damage, skin cancer, and other types of bodily harm. As a result, sufficient evidence supports the trial court's finding that under the subjective analysis gasoline constituted a deadly weapon.

*Multiplicity*

In an alternative argument to his first two issues, Graham contends that his aggravated assault conviction is multiplicitous with one of his robbery convictions. Specifically, Graham argues that the aggravated assault was part of the continuing act of robbery.

The standard of review on questions of multiplicity is plenary. See *State v. Vontress*, 266 Kan. 248, 255, 970 P.2d 42 (1998); *State v. Perry*, 16 Kan. App. 2d 150, 151, 823 P.2d 804 (1991). Recently, the Kansas Supreme Court defined multiplicity as "the charging of a single offense in several counts of a complaint or information." *Vontress*, 266 Kan. at 255. Stated another way, two or more separate convictions cannot be carved out of one criminal action. *Perry*, 16 Kan. App. 2d at 152.

Here, Graham assaulted the clerk with the gasoline after the robbery was completed. Several Kansas cases have held that physical acts committed against victims after property has been taken are separate crimes and not considered part of the taking. For example, in *State v. Bateson*, 266 Kan. 238, 970 P.2d 1000 (1998), the court addressed whether the defendant committed robbery when he took money from the victim's purse, left the room, and later slammed a door in the victim's face. The *Bateson* court held that "[t]o constitute the crime of robbery by forcibly taking property from the person or presence of the victim, it is necessary the violence to the victim must either precede or be contemporaneous with the taking of the property." 266 Kan. 238, Syl. ¶ 1. The *Bateson* court went on to note that subsequent violence cannot convert a theft into a robbery, although it could be the basis for a separate charge of battery. 266 Kan. at 247; see *Aldershof*, 220 Kan. 798, Syl. ¶ 1.

If subsequent violence cannot convert a theft into a robbery, it follows that subsequent violence cannot constitute a continuation of a robbery. It also follows that the subsequent violence can give rise to separate charges. Because Graham committed two separate acts of violence against the clerk, struggling over the money and threatening to throw gasoline, Graham's aggravated assault conviction is not multiplicitous with one of the robbery convictions.

*Sentencing*

In his final argument, Graham contends that the trial court abused its discretion by utilizing a fact not in evidence to deny him a sentencing departure. Graham argues that the trial court misunderstood the facts, as evidenced by the trial court's statement that Graham "threatened a guy with throwing gas on him and lighting him on fire." Graham insists that the evidence does not support the trial court's statement that he threatened to light the clerk on fire. Graham contends that he was unjustifiably prejudiced by the trial court's misunderstanding of the facts, and thus denied an opportunity for a sentence departure.

Graham does not challenge the severity level of the offenses with which he was charged nor does he challenge his criminal history score. He also does not dispute that the trial court imposed the presumptive sentence.

When a presumptive sentence is imposed for a crime and there is no claim of error with regard to crime severity level or criminal history, the appellate courts have no jurisdiction to consider the sentence on appeal. *State v. Starks*, 20 Kan. App. 2d 179, 183, 885 P.2d 387 (1994). The fact that a motion for departure was denied does not make a presumptive sentence appealable. *State v. Myers*, 20 Kan. App. 2d 401, Syl. ¶ 2, 888 P.2d 866 (1995).

For crimes committed before July 1, 1995, the appellate courts can review a presumptive sentence if the defendant alleges that the sentence was the result of partiality, prejudice, oppression, or corrupt motive. K.S.A. 1994 Supp. 21-4721(e); *State v. Windom*, 23 Kan. App. 2d 429, 431, 932 P.2d 1019, *rev. denied* 262 Kan. 969 (1997). This exception, however, is not applicable in the present case because Graham's crimes occurred in 1998. As a result, this court lacks jurisdiction to consider a presumptive sentence. See K.S.A. 21-4721(c)(1) and (e)(1).

Affirmed in part and dismissed in part.