NOT DESIGNATED FOR PUBLICATION

No. 122,117

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GABRIEL TIPTON EVANS,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed October 15, 2021. Affirmed.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before WARNER, P.J., MALONE and BUSER, JJ.


PER CURIAM:  Gabriel Tipton Evans appeals following his convictions of two counts of aggravated domestic battery and one count of aggravated assault. Evans claims: (1) The district court erred in failing to instruct the jury on the lesser included offense of simple assault; (2) the district court erred in failing to define the term "deadly weapon" in the aggravated assault instruction; (3) the district court erred in admitting prior crimes evidence under K.S.A. 60-455; (4) the district court failed to make the "deadly weapon" finding required to invoke the registration requirements of the Kansas Offender Registration Act (KORA); (5) the district court erred in calculating Evans' criminal

1

history score; (6) the Kansas Sentencing Guidelines Act's (KSGA) use of judicial findings of prior convictions is unconstitutional under section 5 of the Kansas Constitution Bill of Rights and the Sixth Amendment to the United States Constitution; and (7) cumulative error deprived him of a fair trial. Finding no reversible error, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

S.S. and Evans were in an on-again, off-again relationship since 2013. On May 25, 2018, S.S. and Evans were together and they spent the day getting coffee, going for a ride on his motorcycle, and sitting on the front porch. While on the porch, S.S. and Evans were looking at the tires on Evans' motorcycle when Evans noticed a ding on the rim of his front tire. Evans began to yell at S.S. and accused her of letting someone into his garage to steal his motorcycle.

Evans chased S.S. around outside. Then they went inside and he pushed her into a wall. Evans grabbed a "wood splitter" from the kitchen, took it outside and said it matched the ding perfectly, and claimed that S.S. used it to pop his tire off.

When Evans came back inside, he continued to yell at S.S., grabbed her by her hair, picked up a ceramic paring knife with a 4 1/2-inch blade, and dragged S.S. downstairs. Evans pushed S.S. onto a couch and got on top of her. He held her down with one hand on her throat and one hand pressing the knife against her throat. Evans told her she was not leaving until she revealed who she let into his house. S.S. tried to get up, but Evans pushed her back down and put his hands around her throat again. Evans applied pressure to S.S.'s neck to the point where she had trouble breathing and got dizzy.

Evans then grabbed S.S. by the arm and brought her upstairs. S.S. went into the bathroom to wash the blood off her neck that came from a small puncture wound left by

2

the knife. She then sat on the couch and told Evans to calm down. Evans sat in a chair but continued to tell S.S. that he knew she let someone into his house. S.S. continued to deny letting someone in his house and Evans came over to the couch and pushed S.S. down with his hands around her throat. S.S. again struggled to breathe, felt like she would pass out, and felt "fuzzy."

Evans then let go of her and went back to the chair he was sitting in. S.S. opened the front door, but Evans asked her what she was doing. S.S. then sat on the couch for a little while, but then she got up and moved toward the door leading to the garage. When Evans turned to look out the sliding door at a passerby, S.S. ran out the front door. She drove to her mother's house. S.S. did not call the police until the next day, when she saw Evans driving through her parents' trailer park.

Wichita Police Officer Jerrad Daniels responded to S.S.'s call. S.S. told Daniels that Evans strangled her several times and put a knife to her throat because he thought she helped people try to steal his motorcycle. Daniels saw a puncture mark on her neck that S.S. claimed was from the knife and photographed it. He also observed and photographed bruising on the left side of her neck.

Daniels also spoke with Evans after he was arrested. Evans admitted that he and S.S. argued, that he was angry, and that S.S. told her dad that he held a knife to her throat. Daniels asked if anything physical happened during the argument. Evans did not answer the question but stated that S.S. liked to be choked during sex.

Wichita Police Officer Chad Spaulding was assigned to investigate S.S.'s case. Spaulding called S.S. in for an interview. S.S. told Spaulding about the events as outlined above. Spaulding asked S.S. about her sexual relationship with Evans. S.S. admitted that she and Evans often had sex that involved him strangling her and that she enjoyed it; but she stated that is not what happened on May 25, 2018.

3

On June 7, 2018, the State charged Evans with aggravated domestic battery and aggravated assault. The State moved to admit Evans' 2015 convictions for violating a protective order under K.S.A. 60-455. The State argued the prior case was relevant to show the relationship between Evans and S.S. and that Evans suffers from delusions that lead to domestic violence incidents. Evans objected arguing the evidence was being used to show propensity. The district court granted the State's motion, finding the evidence was relevant to show the "context of [the] allegation[s]," the relationship between the parties, intent, preparation, plan, or absence of mistake.

On May 22, 2019, the State filed an amended information, charging Evans with two counts of aggravated domestic battery and one count of aggravated assault. The district court held a jury trial. S.S., Daniels, and Spaulding testified for the State.

During the State's case-in-chief, the State asked S.S. about a 2015 domestic violence incident between her and Evans that the court had found admissible under K.S.A. 60-455. Evans requested a continuing objection, which the district court granted. S.S. explained that the case stemmed from an incident where Evans believed there was a device in his ear that let S.S. and others listen to him. Evans drove S.S. around and threatened to kill her with a gun while demanding she remove the device. When Evans stopped the truck, S.S. jumped out and ran to a QuikTrip. Because S.S. did not appear in court, the charges were reduced to violation of a protection from abuse order. S.S. said she did not cooperate in that case because she still loved Evans. The State then called Wichita Police Officer John Knight who testified about responding to the 2015 incident.

Evans did not testify at trial. Evans' defense was that S.S. was not really scared during the incident on May 25, 2018, because she waited a day before calling the police and that any injuries were from consensual sex sometime before the incident. The jury found Evans guilty as charged and found all three counts to be acts of domestic violence.

After reading the verdict, the district court informed Evans that he had a duty to register as a violent offender.

On July 16, 2019, the district court held a sentencing hearing. The district court personally addressed Evans about his criminal history as set forth in the presentence investigation (PSI) report. Evans objected to the PSI report being prepared without his permission but made no other objection to his criminal history. The district court sentenced Evans to a controlling term of 60 months' imprisonment based in part on his criminal history score of A. Evans timely appealed the district court's judgment.

DID THE DISTRICT COURT ERR BY FAILING TO INSTRUCT THE JURY ON SIMPLE ASSAULT?

Evans argues that the district court erred in declining to give the lesser included offense instruction of simple assault. At trial, the district court instructed the jury on aggravated assault, requiring the jury to find "[Evans] knowingly placed [S.S.] in reasonable apprehension of immediate bodily harm . . . with a deadly weapon." See K.S.A. 2020 Supp. 21-5412(b)(1). Evans requested that the district court issue a simple assault instruction, but the district court denied his request, pointing to the use of a knife and finding that if an assault occurred it was with the knife or not at all.

Evans argues the simple assault instruction was legally appropriate as it is a lesser included offense of aggravated assault. He also argues that a simple assault instruction was factually appropriate because S.S. did not testify that she believed the knife was a deadly weapon and, thus, a reasonable juror could have concluded that S.S. did not believe it was a deadly weapon. Evans argues the error is reversible.

The State concedes that simple assault is a legally appropriate lesser included offense of aggravated assault. But the State argues the instruction was not factually appropriate. The State argues that the district court correctly concluded that the only

5

evidence of assault in the case occurred based on the use of the knife. The State argues in the alternative that any error was harmless.

This court employs a multi-step process to review claims of jury instruction error. First, this court must decide whether the issue was preserved. *State v. Williams*, 308 Kan. 1439, 1451, 430 P.3d 448 (2018). Because Evans requested a lesser included offense instruction of misdemeanor simple assault, he properly preserved the issue. Second, this court must decide whether an error occurred by determining whether the requested instruction was legally and factually appropriate. In addressing the first two steps, this court exercises unlimited review. 308 Kan. at 1451. If error is found, this court must then determine whether the error is reversible. 308 Kan. at 1451.

Simple assault is a legally appropriate lesser included offense of aggravated assault. See K.S.A. 2020 Supp. 21-5412(b)(1) ("Aggravated assault is assault . . . [w]ith a deadly weapon."); K.S.A. 2020 Supp. 21-5109(b)(1) and (2) (defining lesser included crime as a lesser degree of the same crime or a crime where all the elements of the lesser crime are identical to some of the elements of the crime charged).

But even when a lesser included offense instruction is legally appropriate, failure to issue the instruction is erroneous only if the instruction would have been factually appropriate. *State v. Becker*, 311 Kan. 176, 183, 459 P.3d 173 (2020). An instruction on a lesser included offense is factually appropriate when there is "'sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction.'" 311 Kan. at 183.

Evans argues that a simple assault instruction was factually appropriate because there was no direct evidence that S.S. believed the knife was a deadly weapon. Evans cites *State v. Graham*, 27 Kan. App. 2d 603, 6 P.3d 928 (2000), in support of his argument that this testimony was required. In *Graham*, the defendant was charged with

6

aggravated assault based on a threat to throw a can of gasoline on the victim. This court explained that a subjective analysis determines whether an assault was committed with a deadly weapon and explained the gasoline could be a deadly weapon based on the victim's testimony that he thought the gasoline could cause eye damage, skin cancer, or other harm if the defendant threw it on him. 27 Kan. App. 2d at 607.

Although a subjective test is used to determine whether a deadly weapon is used in an aggravated assault, *Graham* does not state that there must be direct testimony that the weapon used could produce death or serious bodily injury. S.S. testified that the knife had a 4 1/2-inch blade and that Evans pressed it to her throat while he was on top of her. S.S. kept telling Evans to stop and she testified that she was afraid and did not think he would stop. S.S. also testified that she had a puncture wound from the knife and had blood on her neck. Evans concedes that the jury had circumstantial evidence to determine the knife was a deadly weapon. Thus, the jury could reasonably conclude that the knife constituted a deadly weapon without direct testimony from S.S.

The district court correctly found that an instruction on simple assault was not factually appropriate and that Evans was either guilty of aggravated assault or nothing at all. Thus, the district court did not err by failing to instruct the jury on simple assault.

DID THE DISTRICT COURT ERR BY FAILING TO DEFINE THE TERM "DEADLY WEAPON"?

Evans argues, for the first time on appeal, that the district court erred by failing to define the term "deadly weapon" as used in the aggravated assault instruction. Evans argues that the Pattern Instructions state that when the jury is instructed on aggravated assault based on the defendant's use of a deadly weapon, then the definition of a deadly weapon should be part of the instruction. Evans argues that under the clear error standard, reversal is warranted because the jury may have found that the ceramic paring knife was

a deadly weapon based on Evans' intent alone, rather than considering the issue from S.S.'s perspective.

The State concedes that including the definition of a deadly weapon would have been both legally and factually appropriate. But the State argues that under the clear error standard, Evans cannot establish that the jury would have reached a different verdict because there was no dispute about the deadly nature of the knife at trial.

As in the first issue, this court employs a multi-step process to review claims of jury instruction error. First, this court must decide whether the issue was preserved. Second, it must decide whether an error occurred by determining whether the instruction was legally and factually appropriate. In addressing the first two steps, this court exercises unlimited review. *Williams*, 308 Kan. at 1451. If error is found, this court must then determine whether the error is reversible. 308 Kan. at 1451. But because Evans did not object on this basis at trial, a clear error standard applies to this claim. See K.S.A. 2020 Supp. 22-3414(3). Under a clear error standard, the appellate court must decide "whether it is 'firmly convinced that the jury would have reached a different verdict had the instruction error not occurred.'" *Williams*, 308 Kan. at 1451. Evans has the burden of establishing clear error. See *State v. Gentry*, 310 Kan. 715, 721, 449 P.3d 429 (2019).

Evans is correct that the pattern instruction for aggravated assault includes a recommended definition for the term deadly weapon: "A deadly weapon is an instrument which, from the manner in which it is used, is calculated or likely to produce death or serious bodily injury. An object can be a deadly weapon if the user intended to convince a person that it is a deadly weapon and that person reasonably believed it to be a deadly weapon." PIK Crim. 4th 54.280 (2019 Supp.). Thus, it would have been both legally and factually appropriate to give the definition.

8

That said, Evans fails to establish that the jury would have reached a different verdict had the definition of a deadly weapon been given. The State explained in closing argument that the aggravated assault charge stemmed from Evans' use of the knife. We are not firmly convinced that the jury would have reached a different verdict had the definition been given. The jury, based on common sense and experience, could determine that a knife with a 4 1/2-inch blade was a deadly weapon without having a written definition. Because Evans has failed to meet his burden to establish clear error, he has no right to relief on this claim.

DID THE DISTRICT COURT ERR IN ADMITTING EVIDENCE UNDER K.S.A. 60-455?

Evans next claims the district court erred in admitting evidence of his 2015 convictions and the allegations from the incident under K.S.A. 60-455 because the events did not speak to a relevant or disputed fact. At a pretrial hearing, the State moved to admit the evidence, arguing that it would show that the parties had a history of domestic violence, and that Evans was suffering from paranoid schizophrenia and often thought there was a conspiracy against him. Before the State could continue presenting its argument, Evans disrupted the proceeding to the point that the court had him removed. After a recess, Evans still did not calm down and the proceeding continued without him. The State reiterated its argument that the prior case showed that Evans suffered from delusions and that the prior case was necessary "to explain otherwise inexplicable acts." The district court agreed with the State, ruling that the 2015 incident was relevant to show "the context of this allegation," the relationship between the parties, intent, preparation, plan, and absence of mistake or accident.

At trial, the State admitted the prior crimes evidence through the testimony of S.S. and Knight. The testimony established that in 2015, Evans threatened S.S. with a gun because he believed she placed a listening device in his ear. S.S. also stated that she loved Evans at that time and refused to cooperate with the prosecution which led to the only

9

charges being for violating a protection order. Evans received a continuing objection for both S.S. and Knight's testimony. The district court issued a limiting instruction after both S.S. and Knights' testimony stating the jury could only consider the evidence as it related to motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or the relationship of the parties. Evans does not challenge the jury instruction.

Evans argues that because his defense was not an innocent explanation for the incident, but a categorical denial, intent and absence of mistake were not at issue. He also argues the evidence can only be admissible to show a plan when the prior crime is strikingly similar to the present case or so distinct to be a signature. Finally, Evans argues that the district court erred in admitting the evidence to show the relationship of the parties because he asserts that this evidence is improper under Kansas law.

The State concedes that it is "arguably true through the distorting lens of hindsight" that intent, absence of mistake, plan, and preparation were not in dispute. But the State argues that each of the crimes charged contained an intent element, and the State did not know whether Evans would claim a mental disease or defect defense until he concluded his case. Alternatively, the State asserts that any error was harmless.

Under K.S.A. 2020 Supp. 60-455(a), "evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion." But such evidence is "admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." K.S.A. 2020 Supp. 60-455(b).

In reviewing the admission of prior crimes evidence under K.S.A. 60-455, an appellate court uses a three-step test. First, the court considers whether the evidence is

relevant to establish a material fact at issue. Determining whether the prior crimes evidence is material is subject to de novo review. Second, the reviewing court must determine whether the material fact is disputed and whether the material fact is relevant to prove the disputed fact. This determination by the district court is reviewed for an abuse of judicial discretion. Finally, the court must consider whether the probative value of the evidence outweighs its prejudicial effect. This step is also analyzed under an abuse of discretion standard of review. If prior crimes evidence is admitted under K.S.A. 60-455 in a jury trial, a limiting instruction must be provided to inform the jury of the specific purpose for which the evidence was admitted. *State v. Haygood*, 308 Kan. 1387, 1392-93, 430 P.3d 11 (2018).

Evans' arguments challenge only the first two steps, whether the evidence was relevant to establish a material fact and whether that fact was disputed. As discussed below, Evans correctly asserts the district court erred in admitting the evidence to prove identity, absence of mistake, plan, or preparation, as these were not material and disputed facts. But the evidence was admissible to prove motive, referred to by the district court as the "context" of the allegations, and relationship of the parties.

Evans first argues that intent and absence of mistake were not disputed at trial because his defense was a categorical denial that the events occurred. Thus, he contends the evidence was not admissible on these bases. He cites *State v. Prine*, 287 Kan. 713, 200 P.3d 1 (2009), in support of his assertion.

*Prine* dealt with charges of aggravated criminal sodomy and aggravated indecent liberties with a child. The State moved to admit evidence of prior sexual abuse allegations under K.S.A. 60-455, which the district court granted to prove intent, plan, and absence of mistake. On appeal, the court determined that the evidence was not admissible to prove intent or absence of mistake because those issues were not disputed at trial. 287 Kan. at 726-28. The court explained that if the acts described occurred,

11

because they are criminal in and of themselves, no adult would have committed the activities without the intent required by statute. 287 Kan. at 727. Similarly, absence of mistake was not at issue because the defendant never claimed an innocent explanation for the acts as a defense and instead issued a categorical denial. 287 Kan. at 728.

As Evans asserts, his defense at trial was that he did not commit the crimes and S.S. was lying. He also argued during closing that the bruising seen on S.S. could have been caused by consensual sex a day or two before the incident occurred. Thus, the real dispute was whether the events occurred at all, not whether the events occurred with the required intent. Stated another way, if the events did occur as S.S. described them then the acts occurred with the required intent. As a result, Evans is correct in asserting that intent and absence of mistake were not in dispute. See *Prine*, 287 Kan. at 727-28; *State v. Boggs*, 287 Kan. 298, 314, 197 P.3d 441 (2008) (finding that when the only issue in dispute was whether the defendant committed the acts at all, intent, knowledge, or absence of mistake or accident were not material or disputed facts). Thus, the district court erred in admitting the evidence on these bases.

Evans then asserts that the evidence was also not admissible to prove plan. "Evidence can be admitted to prove plan either when the prior misconduct is so '"strikingly similar" in pattern or so distinct in method of operation as to be a "signature"' or when 'there is some direct or causal connection between the earlier conduct and the crimes charged.'" *State v. McCune*, 299 Kan. 1216, 1227, 330 P.3d 1107 (2014). The State claims that the 2015 incident was strikingly similar to this incident because Evans believed in some conspiracy, obtained a weapon, and threatened S.S.. But the similarities the State points to—the obtaining a weapon and threatening the victim—are likely facts present in most aggravated assault claims. The only real distinct fact from most aggravated assault claims is that the incidents were predicated on Evans' delusions. Further, the rest of the 2015 incident was different:  Evans did not touch S.S., he did not

12

choke her, and the incident occurred in a car with a different kind of weapon. Thus, the district court erred in admitting the evidence to show plan.

Evans next challenges preparation. Preparation "'consists in devising or arranging means or measures necessary for its commission. . . . Accordingly, a series of acts that very logically convinces the reasonable mind that the actor intended that prior activities culminate in the happening of the crime in issue may have strong probative value in showing preparation.'" *State v. Grissom*, 251 Kan. 851, 925, 840 P.2d 1142 (1992). The State asserts preparation was a material fact here because in the 2015 incident, Evans obtained a weapon and isolated S.S. to confront her about his beliefs. But the State's theory at trial was that Evans committed this offense because of a delusion triggered by a ding in his motorcycle and then used the items around him—the kitchen knife—to commit the crimes. Thus, preparation was not material and not at issue in this case.

To summarize this point, Evans correctly asserts that the district court erred in admitting the 2015 incident to show intent, absence of mistake or accident, plan, or preparation. But the district court also stated the evidence was admissible to prove "the context of this allegation" and the relationship between the parties. As analyzed below, these were appropriate bases for admission.

The parties fail to address the district court's ruling that the evidence was admissible to show "the context of this allegation." Evans mentions this ruling, but he loops it in with his argument on the relationship of the parties. While the district court did not use the word "motive" in its ruling, the "context of this allegation" is essentially speaking to motive. Also, the limiting instruction given by the district court used the term "motive" instead of the term "context of this allegation."

In a recent case, *State v. Evans*, 313 Kan. 972, 987-89, 492 P.3d 418 (2021), the Kansas Supreme Court found K.S.A. 2020 Supp. 60-455 evidence of prior threats and

stalking in a relationship was relevant to show motive for a murder charge. The court explained that "[i]n the absence of the background context of the parties' relationship, it would have been unclear to the jury why [the defendant] could have behaved as charged." 313 Kan. at 989. The court then quoted *State v. Engelhardt*, 280 Kan. 113, 128, 119 P.3d 1148 (2005), for the proposition that "'[m]otive supplies the jury with some degree of explanation, responding to a juror's natural tendency to wonder why a defendant behaved in the manner described by the State.'" *Evans*, 313 Kan. at 989. The defendant there also argued that the evidence could not be used to show motive because her defense was a categorical denial, but the court explained that "a defendant may not avoid motive evidence simply by contending he or she did not commit the act; often, motive is used for the precise reason of helping to prove he or she did commit the act." 313 Kan. at 991.

Here, as the district court recognized, the 2015 incident places Evans' behavior in context and helps prove he did commit the crimes charged. S.S. testified that she and Evans ran errands earlier in the day and were sitting on the front porch until the incident started. Without the 2015 incident, which shows that Evans is prone to paranoid delusions, the jury would have no explanation for why or how Evans went from sitting on the front porch with S.S. to holding her at knife point and choking her. As a result, the district court did not abuse its discretion in finding motive, or as the district court put it the "context" of the allegations, was a material and disputed fact.

Evans then asserts that the evidence was not admissible to establish the relationship between the parties because caselaw establishes that a continuing course of conduct or relationship of the parties is not a material fact admissible under K.S.A. 60-455. Evans relies on *State v. Warledo*, 286 Kan. 927, 190 P.3d 937 (2008), in support of his assertion that evidence of relationship of the parties is improper and inadmissible. In that case, the court ruled that previous battery cases and incidents were not admissible "*independent* of K.S.A. 60-455" to show the relationship of the parties because prior Kansas Supreme Court precedent, *State v. Gunby*, 282 Kan. 39, 144 P.3d 647 (2006),

14

abolished the exception and required all evidence to be admitted under K.S.A. 60-455. (Emphasis added.) *Warledo*, 286 Kan. at 942. Thus, *Warledo* does not stand for the proposition that evidence of relationships of the parties is inadmissible or improper. It simply required that such evidence be considered under the lens of K.S.A. 60-455.

More recently, the Kansas Supreme Court has acknowledged that some courts have misconstrued *Gunby* and it clarified:

> "We acknowledge this discussion in *Gunby* cast the strong impression that we had overruled the so-called 'marital discord exception' and that henceforth, even evidence of 'problems between spouses' would be subject to the limits of K.S.A. 2017 Supp. 60-455. Indeed, some courts have read *Gunby* as a blanket rule that requires all evidence of marital discord to be admitted through K.S.A. 2017 Supp. 60-455.
> "But our corrective work in *Gunby* is now itself due for a tune up. As anyone possessing even a passing familiarity with the ups-and-downs of the marital relationship can easily attest, there is a vast distance between mere 'problems' in a marriage and domestic violence or other acts that would qualify as other crimes or civil wrongs. The category of 'marital discord' is far too broad to admit to a single, uniform rule concerning K.S.A. 2017 Supp. 60-455. Sometimes discord will ripen into actual other crimes or civil wrongs. Often, it will not. Courts must analyze the specific and concrete evidence in each instance to determine whether the evidence truly qualifies as evidence of other crimes or civil wrongs. [Citations omitted.]" *State v. Campbell*, 308 Kan. 763, 773-74, 423 P.3d 539 (2018).

Thus, contrary to Evans' assertion, the relationship of the parties is still a valid fact in some cases. The caselaw cited merely establishes that if the evidence is a prior crime or civil wrong, rather than mere problems in the relationship, then the evidence is subject to the analysis required by K.S.A. 60-455.

Here, the relationship of the parties was a material and disputed fact. As mentioned above, Evans claimed that S.S. made the incident up, as evidenced by her

delay in reporting to law enforcement. But the 2015 incident explains why she may have delayed in reporting to law enforcement: she loved Evans and his delusions and threats were not an uncommon occurrence in their relationship. See, e.g., *McCune*, 299 Kan. at 1228 (finding evidence of prior sexual and physical abuse admissible to show the relationship of the parties and explain victim's delay in reporting); see also *Evans*, 313 Kan. at 991 (explaining that prior acts explaining tumultuous relationship of the parties "was essential to establish the context" for the crimes).

In sum, while some of the bases cited by the district court for admission of the evidence were erroneous, the evidence was admissible to show motive and the relationship between the parties. As a result, the district court did not err in admitting the prior crimes evidence under K.S.A. 60-455.

DID THE DISTRICT COURT ERR BY FAILING TO MAKE THE "DEADLY WEAPON" FINDING NECESSARY TO REQUIRE EVANS TO REGISTER AS A VIOLENT OFFENDER?

KORA requires defendants convicted of certain crimes to register with the State, including those who are "convicted of any person felony and the court makes a finding on the record that a deadly weapon was used in the commission of such person felony." K.S.A. 2020 Supp. 22-4902(e)(2); *State v. Carter*, 311 Kan. 206, 209, 459 P.3d 186 (2020). The district court informed Evans that he had a duty to register under KORA because he had "been convicted of the aggravated assault" and the district court also gave him the notice of duty to register. At sentencing, the district court again reminded Evans that he had a duty to register. The journal entry reflected that the Evans had to register based on his commission of a person felony with a deadly weapon.

For the first time on appeal, Evans argues that the district court did not make the "deadly weapon" finding required to trigger offender registration because it did not make the finding in an oral pronouncement from the bench. Evans acknowledges that the

16

Kansas Supreme Court held, in *Carter*, that the deadly weapon finding in a journal entry was sufficient, but he argues that result stemmed from a lack of Carter presenting the proper arguments. Evans then attempts to present the proper argument: asserting that the deadly weapon finding is part of "the judgment" of the court and thus under the rules of criminal procedure it must be pronounced orally from the bench.

The State argues that the district court made the requisite finding orally when it stated Evans had a duty to register because he "'been convicted of the aggravated assault'" and because the notice of registration stated that he needed to register because he committed aggravated assault with a deadly weapon. The State argues even if the district court's statement about aggravated assault did not suffice, the journal entry alone can trigger the registration requirements as held in *Carter*.

Generally, this court does not consider issues raised for the first time on appeal. *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019). But there are exceptions to the general rule and Evans correctly asserts that this court can hear this issue for the first time on appeal because it involves only a question of law arising on proved or admitted facts and it is finally determinative of the case. 309 Kan. at 995.

This court applies de novo review to this issue as it involves the interpretation of K.S.A. 2020 Supp. 22-4902(e)(2) and K.S.A. 2020 Supp. 22-3424(a). *State v. Marinelli*, 307 Kan. 768, 788, 415 P.3d 405 (2018). The appellate court's rules on statutory interpretation are well known:

> "'When interpreting statutes, [the court] begin[s] with "'the fundamental rule that [courts] give effect to the legislature's intent as it is expressed in the statute. Courts must apply a statute's language when it is clear and unambiguous, rather than determining what the law should be, speculating about legislative intent, or consulting legislative history.'" [The court] derive[s] legislative intent by first applying the meaning of the statute's text to determine its effect in a specific situation. "'It is only when the language is unclear or

ambiguous that the court employs the canons of statutory construction, consults legislative history, or considers other background information to ascertain the statute's meaning." [Citations omitted.]'" *State v. LaPointe*, 309 Kan. 299, 314-15, 434 P.3d 850 (2019).

As Evans acknowledges, the Kansas Supreme Court recently addressed the sufficiency of the deadly weapon finding. In *Carter*, the defendant asserted that she did not have to register because the district court found that she used "a dangerous weapon" to commit her crime of conviction, not a "deadly weapon" as required by the statute. 311 Kan. at 209. The Kansas Supreme Court referenced prior precedent, *State v. Thomas*, 307 Kan. 733, 750, 415 P.3d 430 (2018), and reiterated that KORA is not considered punishment and thus the violent offender finding is not part of a defendant's sentence. *Carter*, 311 Kan. at 210. The court then pointed out that the district court checked the box on the journal entry reflecting that it found Carter used a deadly weapon during the commission of a crime. The court found that "Carter's arguments on appeal entirely disregard the journal entry and do not explain why it should not qualify as an adequate KORA finding on the record." 311 Kan. at 210.

The court then stated that Carter could have argued that the sentence pronounced from the bench typically controls over the journal entry, but it then preemptively explained that the argument would have failed because "that rule is not applicable here because of the majority holding in *Thomas* that registration is not part of a defendant's sentence." 311 Kan. at 210. The court found that "[i]n the absence of any other argument from Carter to the contrary, we hold that the journal entry included in the record of this case shows the district judge made the necessary finding under K.S.A. 2019 Supp. 22-4902(e)(2)." 311 Kan. at 211.

Recognizing that like *Carter*, the journal entry here reflected that the district court found Evans used a deadly weapon during the commission of the offense, Evans argues

18

the court's language in *Carter* limited its holding to challenges classifying the deadly weapon finding as a part of the sentence. Evans then attempts to distinguish his argument from the one rejected in *Carter*. Evans points to K.S.A. 2020 Supp. 22-3424(a), a criminal procedure statute discussing the entry of judgment, which states that "[t]he judgment shall be rendered and sentence imposed in open court." Evans acknowledges that registration is not part of his sentence, but he asserts that it is "certainly part of the judgment of the court" and thus the findings triggering registration must still be pronounced orally from the bench.

This exact argument was addressed in *State v. Stuart*, No. 122,455, 2021 WL 841938 (Kan. App.) (unpublished opinion), *rev. denied* 313 Kan. 1045 (2021). In that case, the defendant also tried to distinguish his argument from *Carter* and asserted that K.S.A. 2020 Supp. 22-3424(a) demanded that KORA findings must be stated orally from the bench. In response, this court found that "the Kansas Supreme Court has held that not all provisions of a judgment in a criminal proceeding are part of a criminal sentencing and therefore do not need to be announced in open court," and cited *State v. Phillips*, 289 Kan. 28, 29-30, 210 P.3d 93 (2009), in support. *Stuart*, 2021 WL 841938, at \*3. This court concluded:

> "The language of K.S.A. 2020 Supp. 22-4902(e)(2)—'the court makes a finding on the record'—tends to support the notion that the Kansas Legislature intended the court to make its findings in open court, but that conclusion is not inevitable. See Kansas Supreme Court Rule 3.02 (2020 Kan. S. Ct. R. 20) (defining the contents of the record on appeal in a criminal case to include the journal entry of judgment). The ambiguity inherent in K.S.A. 22-3424(a) recognized in *Phillips* does not assist Stuart in his attempts to convince this court that the Kansas Supreme Court would have reached a different conclusion in *Carter* if it had been presented with the language of K.S.A. 2020 Supp. 22-3424(a). Stuart has not successfully distinguished the binding authority of *Carter*." *Stuart*, 2021 WL 841938, at \*3.

Like the defendant in *Stuart*, Evans fails to establish that he is entitled to relief. His argument relies on two premises: (1) the criminal procedure statutes, including K.S.A. 2020 Supp. 22-3424(a), apply to KORA and (2) K.S.A. 2020 Supp. 22-3424(a)'s use of the term "judgment" includes KORA's deadly weapon finding. But our Supreme Court recently held that KORA is a civil regulatory scheme outside the scope of the Code of Criminal Procedure. *City of Shawnee v. Adem*, 314 Kan. ___, 494 P.3d 134, 140 (2021). Because KORA is not part of the Code of Criminal Procedure, which includes K.S.A. 2020 Supp. 22-3424(a), Evans' reliance on that statute as requiring the deadly weapon finding to be made in open court is unpersuasive. We follow *Carter*'s holding that a deadly weapon finding in the journal entry can trigger KORA registration. Thus, the district court did not err in ordering Evans to register as a violent offender.

## DID THE DISTRICT COURT ERR IN CALCULATING EVANS' CRIMINAL HISTORY SCORE?

Evans argues, for the first time on appeal, that his sentence is illegal because the State did not provide sufficient evidence to support his criminal history score. More specifically, Evans asserts that the district court erred in aggregating and counting six misdemeanor convictions because the State, through the PSI, failed to prove that he was represented by counsel for his "municipal" convictions or that he waived counsel.

The State claims that Evans' argument is purely hypothetical because he does not actually claim that the misdemeanors were uncounseled, he just raises the possibility that they could have been. The State asserts that because Evans did not object at sentencing to scoring the misdemeanor convictions in his criminal history, then under K.S.A. 2020 Supp. 21-6814(b) the PSI was sufficient to carry the State's burden of proving Evans' criminal history. The State also points out that Evans misclassifies his convictions as municipal convictions, but the challenged convictions are the misdemeanors from the 2015 Sedgwick County case admitted at trial as prior crimes evidence. The State asserts that the exhibits admitted at trial prove that Evans had counsel on these convictions.

20

Evans correctly asserts that he can raise a challenge to his criminal history score for the first time on appeal through an illegal sentence challenge. *State v. Dickey*, 301 Kan. 1018, 1034, 350 P.3d 1054 (2015). A sentence is illegal sentence if it is imposed by a court without jurisdiction, it does not conform to the applicable statutory provision, or it is ambiguous concerning the time and manner it is to be served. K.S.A. 2020 Supp. 22-3504(c)(1). Whether a sentence is illegal is a question of law subject to unlimited review. *State v. Sartin*, 310 Kan. 367, 369, 446 P.3d 1068 (2019).

In determining an offender's criminal history, three prior adult convictions of class A or class B person misdemeanors can be aggregated into one adult person felony. See K.S.A. 2020 Supp. 21-6811(a). But an uncounseled misdemeanor conviction that is obtained in violation of a person's Sixth Amendment right to counsel cannot be used in the criminal history score in a subsequent criminal proceeding. *State v. Neal*, 292 Kan. 625, 633, 258 P.3d 365 (2011). Here, the PSI showed that Evans had a criminal history score of A. His criminal history score was based in part on the six person misdemeanor convictions from the 2015 Sedgwick County case—for violating a protection from abuse order—that were converted into two person felonies. If the convictions cannot be part of his criminal history score, then Evans' criminal history score would have been B.

We need not address the State's arguments that Evans' claim is merely hypothetical, and that the PSI was sufficient to carry the State's burden of proving Evans' criminal history because he did not object at sentencing to how the misdemeanor convictions were scored. Because the 2015 convictions were used as prior crimes evidence at trial, the State admitted the journal entry for the 2015 convictions as Exhibit 13. The journal entry reflects that Evans was represented by counsel, pleaded to the six counts of violating a protection from abuse order, and was sentenced. The journal entry is even signed by Evans' counsel. Thus, the record shows Evans had counsel on the challenged misdemeanor convictions. As a result, Evans' sentence was not illegal. See *State v. Ross*, No. 120,207, 2019 WL 11868559, at *4 (Kan. App. 2019) (unpublished

opinion) (finding this court can consider documents in the record to uphold the defendant's criminal history score), *rev. denied* 312 Kan. 900 (2020).

## DOES THE SENTENCING COURT'S USE OF JUDICIAL FINDINGS OF PRIOR CONVICTIONS VIOLATE THE KANSAS AND FEDERAL CONSTITUTIONS?

Evans argues for the first time on appeal that the KSGA's use of judicial findings of prior convictions for criminal history purposes is unconstitutional under section 5 of the Kansas Constitution Bill of Rights. Evans raises the same argument recently rejected by the Kansas Supreme Court in *State v. Albano*, 313 Kan. 638, 487 P.3d 750 (2021). In *Albano*, the Kansas Supreme Court held that "the KSGA provisions authorizing the court to make criminal history findings for purposes of imposing a sentence do not violate section 5 because such judicial findings do not impair the traditional functions of the jury in Kansas criminal proceedings." 313 Kan. at 657. The Kansas Court of Appeals is duty-bound to follow Kansas Supreme Court precedent. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017).

Evans also argues that the KSGA infringes on his Sixth Amendment rights, because he claims under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), the State had to prove his prior convictions to a jury. But Evans concedes that the Kansas Supreme Court rejected this argument in *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002). The Kansas Supreme Court has consistently reaffirmed Ivory, most recently in *Albano*. 313 Kan. at 643. Thus, the district court did not violate Evans' constitutional rights at sentencing.

## DID CUMULATIVE ERROR DEPRIVE EVANS OF A FAIR TRIAL?

Finally, Evans claims the cumulative effect of the instructional errors and the erroneous admission of the prior crimes evidence denied him a fair trial. The State counters that Evans fails to identify multiple errors to support a cumulative error claim.

22

The State is correct that there are not multiple errors to support a finding of cumulative error. The only error was the failure to give the definition of a deadly weapon in the aggravated assault instruction. One error cannot support a cumulative error finding. *State v. Lemmie*, 311 Kan. 439, 455, 462 P.3d 161 (2020). Thus, Evans is not entitled to relief on this claim.

Affirmed.