NOT DESIGNATED FOR PUBLICATION

No. 126,592

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

AARON MITCHELL BOWSER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Clay District Court; JOHN F. BOSCH, judge. Submitted without oral argument. Opinion filed October 11, 2024. Affirmed.

*Darby VanHoutan*, of Kansas Appellate Defender Office, for appellant.

*Joel P. Mason*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before MALONE, P.J., GREEN and SCHROEDER, JJ.

MALONE, J.:  There is a reason professional wrestling banned "chair shots" to the head. See Lou Flavius, *AEW Bans Chair Shots to the Head Following Cody Rhodes Scare*, The Sportster (April 21, 2024), https://www.thesportster.com/wrestling/aew-ban-chair-shots-head/. Hitting someone over the head with a steel chair is likely to produce death or serious bodily injury. Aaron Mitchell Bowser appeals his convictions by a jury of three counts of aggravated assault of a law enforcement officer and one count of aggravated assault. Bowser claims the State presented insufficient evidence for the jury to find that a steel folding chair he used to assault his victims was a deadly weapon. He also claims the district court abused its discretion when it initially granted his motion for a

1

presentence mental evaluation at the state security hospital but later vacated its order and proceeded to sentencing after Bowser violated his bond conditions. For the reasons explained below, we reject Bowser's claims and affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On January 9, 2022, Scott Galindo, a Clay Center police officer, responded to a call alleging that Bowser had broken into a neighbor's house. Doug Wickstrum, an inhabitant of the house, told Galindo that he was sitting on the couch when he heard a knock on the back door followed immediately by the sound of breaking glass. Wickstrum looked up to see Bowser standing in the doorway between the kitchen and the living room. According to Wickstrum, Bowser was talking about an incident that happened to him the night before. Bowser then threw a rock at another window from where he stood inside the house, threatened Wickstrum not to tell anyone, and left the residence.

Galindo spoke with Bowser at his mother's house where he lived just down the street from the break-in. Galindo described how Bowser "just kept rambling about events that happened the night prior." Bowser would "veer off" with allegations that someone had damaged his car the previous night. Galindo suspected that Bowser was "under the influence" of an unspecified narcotic because he was speaking quickly, "wasn't centered" on Galindo's questions, and would "go off in a tangent."

Galdino arrested Bowser but had to call for backup because he was uncooperative. Bowser told Galindo that he was not going to jail, he pulled away, and called Galindo a terrorist. After an initial struggle, Galdino placed Bowser in handcuffs. Bowser's arrest was recorded on Galindo's body cam and that recording was admitted into evidence.

Bowser was transported to jail and handed off to jail staff for booking. Larry Ryan, a corrections officer with the Clay County Sheriff's Office, booked Bowser into the

2

county jail. Bowser was agitated and "was very angry with the current situation that he was in." Ryan spent over an hour trying to de-escalate the situation. Ryan tried to move Bowser to a holding cell, but Bowser refused to comply and said he would "not . . . let anybody put their hands on him . . . ." Bowser paced the booking room, and when asked why, he responded that he was "looking for something to defend [himself] or a weapon." Bowser eventually agreed to be moved into an interview room without incident. There was at least one steel folding chair in the interview room leaning against the wall.

Ryan left the interview room and called for backup, which included Galindo, to help move Bowser to a cell. Ryan and the supporting officers entered the interview room and told Bowser they were moving him to a holding cell. Bowser started yelling and then "immediately reached for" the steel folding chair. Ryan saw Bowser put his hands on the chair and draw it up to this chest and was afraid that Bowser would use the chair to hit him or another officer. Galindo had similar fears that Bowser would use the chair as a weapon because of how he grabbed it and because of comments he had made earlier in the day implying that he had nothing to live for. Ryan, Galindo, and two other officers pinned Bowser against the wall, placed him in handcuffs, and eventually got him under control. The incident was captured on Galindo's body cam and admitted into evidence.

The State charged Bowser with three counts of aggravated assault of a law enforcement officer, one count of aggravated assault, one count of interference with law enforcement, one count of criminal damage to property, and one count of criminal trespass. At trial, Galindo and Ryan testified to the above facts. Clinton Smee and Mark Werbin, two other law enforcement officers involved in the chair incident, provided similar testimony. Both officers testified they feared that Bowser intended to attack them with the chair. We need not summarize the State's evidence supporting the other charges not contested on appeal. Bowser presented no evidence at trial. After hearing the evidence and closing arguments, the jury found Bowser guilty on all counts.

Before sentencing, Bowser moved the district court to order a mental evaluation at the Larned State Hospital as part of the presentence investigation. The district court held a hearing on the motion on August 18, 2022. The arguments were brief—Bowser sought a mental evaluation because he claimed it would be useful for the district court's determination and the State opposed the motion because the full presentence investigation report had been prepared. The district court acknowledged that the hospital had a long backlog but granted Bowser's motion and continued sentencing pending the evaluation. The district court released Bowser on a supervised bond.

On April 18, 2023, the State moved to revoke Bowser's bond for violating his bond conditions by refusing to perform a urinalysis test and for admitting to using THC. The district court held a hearing on April 27, 2023. After hearing evidence, the district court revoked Bowser's bond and ordered him to remain in custody until sentencing. The district court also reconsidered its pending order that Bowser receive a mental evaluation and stated it might want to rescind that order. The district court scheduled a hearing for a week later and told the parties to think about how they wanted to proceed, but it stated the parties should "be prepared for sentencing next week."

The district court held a hearing on May 4, 2023. After some discussion with counsel, the district court found that because eight months had passed without an evaluation and because even more time might still pass, it would vacate its previous order for Bowser to have a mental evaluation and would sentence him at that hearing. The parties agreed to Bowser's criminal history score. The district court heard arguments from counsel about sentencing recommendations and Bowser addressed the court about his case. The district court imposed the standard presumptive sentence of 39 months' imprisonment and 24 months' postrelease supervision with all counts running concurrent. Bowser timely appealed the district court's judgment.

Bowser claims there was insufficient evidence to support his convictions of three counts of aggravated assault of a law enforcement officer and one count of aggravated assault, but he challenges only one element of those convictions. Bowser claims there was insufficient evidence to support the jury's finding that the folding chair he used in the assaults was a deadly weapon. The State argues the jury properly found that the steel folding chair was a deadly weapon and there was sufficient evidence to support the aggravated assault convictions.

> "'When the sufficiency of the evidence is challenged in a criminal case, we review the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. An appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses.'" *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021).

Bowser was convicted under K.S.A. 2021 Supp. 21-5412(b)(1) and (d)(1). Both subsections require the use of a deadly weapon. "'A deadly weapon is an instrument which, from the manner in which it is used, is calculated or likely to produce death or serious bodily injury.'" *State v. Lowe*, 317 Kan. 713, 719, 538 P.3d 1094 (2023) (quoting *State v. Hanks*, 236 Kan. 524, 537, 694 P.2d 407 [1985]). The test for determining whether an object is a deadly weapon may be subjective or objective depending on the crime committed. For aggravated assault, courts use a subjective test. *Lowe*, 317 Kan. at 719-20. Under that test, "'[a]n object can be a dangerous weapon if intended by the user to convince the victim that it is a dangerous weapon and the victim reasonably believes it is a dangerous weapon.'" *State v. Moore*, 269 Kan. 27, 32, 4 P.3d 1141 (2000) (quoting *State v. Davis*, 227 Kan. 174, 176, 605 P.2d 572 [1980]). This test has two elements: (1) the assailant must intend to convince the victim that an object is a dangerous weapon and (2) the victim must reasonably believe the object is a dangerous weapon.

5

In *State v. Graham*, 27 Kan. App. 603, 606-07, 6 P.3d 928 (2000), this court analyzed the subjective test for a deadly weapon as part of Graham's aggravated assault conviction. Graham threatened to pour gasoline on a convenience store clerk, and the clerk testified that he felt threatened because he thought gasoline could cause eye damage, skin cancer, or other types of bodily harm. This court found that "under a subjective analysis, gasoline constitutes a dangerous weapon. The evidence shows that Graham threatened to use gasoline in a manner that communicated an apparent ability to inflict bodily harm. Moreover, the clerk reasonably believed bodily injury could occur if Graham threw gasoline on him. [Citations omitted.]" 27 Kan. App. 2d at 607.

Bowser claims the evidence in his case could not show that he intended to convince the officers that the folding chair was a deadly weapon and their belief that the chair was a deadly weapon was not reasonable. He acknowledges *Graham* and similar cases but argues that a folding chair is distinguishable from the more obviously dangerous weapons like gasoline in *Graham* or replica firearms as in *State v. Adams*, 12 Kan. App. 2d 191, 194-95, 737 P.2d 876 (1987). But this argument ignores the evidence.

First, the folding chair was made of steel. Thus, there is an element of common sense that the chair, if swung, could produce serious bodily injury. Moreover, all four officers in the interview room testified that Bowser grabbed the chair with both hands and appeared as though he was preparing to swing or brandish the chair as a weapon. Ryan testified that Bowser had told him he was looking for a weapon to defend himself during the booking process. Bowser was agitated throughout the booking process, and before lunging for the chair he pounded his hands on the table. He refused to comply with directions to move to a holding cell and informed Ryan that he would not let anybody put their hands on him. The body cam footage also shows that Bowser was agitated in the interview room before he quickly lunged for the chair and began to draw it up to his body as if to swing it at the officers before they swarmed and disarmed him.

6

Although Bowser did not make a contemporaneous threat as in *Graham*, evidence of his actions and the surrounding circumstances was sufficient for the jury to reasonably infer that Bowser grabbed the chair with the intent to use it as a weapon to keep the officers from touching him or moving him to a holding cell. That comes with the natural implication that Bowser intended to convince the officers that the chair was likely to produce death or serious injury. This finding aligns with the holding in *Graham* where communication of the apparent ability to inflict bodily harm was sufficient to establish Graham's mental culpability in the subjective deadly weapon test. 27 Kan. App. 2d at 607. Here, Bowser's conduct communicated that apparent intent and ability to do serious bodily harm. Thus, there is sufficient evidence on the first element.

Much of the same evidence supports that the officers had a reasonable belief that the chair was a deadly weapon. Each officer testified to their fear that Bowser intended to use the chair as a weapon. They also testified that Bowser appeared to be preparing to brandish or swing the chair as a weapon. Smee testified that every officer knew Bowser was agitated before they entered the room. Bowser was visibly agitated when the officers entered the interview room and eventually lunged at the chair and appeared to start bringing it to his body in a swinging motion. Galindo testified that he was fearful that the chair's metal structure could cause serious injuries like broken jaws or deep lacerations. The interview room was small so Bowser could have quickly hit someone if not subdued. That evidence is all bolstered, in the light most favorable to the State, with the common-sense inference that a steel chair can cause serious harm when swung with force.

Bowser's only argument against this evidence is his own unsupported conclusion that "there is no evidence supporting how [the officers' nervousness] translates into a reasonable belief that the chair was a deadly weapon under the circumstances." But, as stated above, that conclusion ignores the evidence. Sufficient evidence in the light most favorable to the State supported the jury's finding that Bowser intended to convince the victims that the steel folding chair was a dangerous weapon and that the victims

7

reasonably believed that the chair was a dangerous weapon. Thus, we conclude there was sufficient evidence to support Bowser's aggravated assault convictions.

SENTENCING ISSUE

Bowser next claims that the district court abused its discretion and violated his right to due process by vacating its order that he receive a mental evaluation as part of the presentence evaluation "based solely on long wait times." The State counters that the district court did not abuse its discretion under the applicable statute.

A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Bilbrey*, 317 Kan. 57, 63, 523 P.3d 1078 (2023). The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *State v. Keys*, 315 Kan. 690, 708, 510 P.3d 706 (2022). An appellate court has unlimited review over whether Bowser's right to due process has been violated. 315 Kan. at 700. To the extent Bowser's claim requires statutory interpretation, an appellate court exercises unlimited review. *State v. Betts*, 316 Kan. 191, 197, 514 P.3d 341 (2022).

K.S.A. 22-3429 provides:

"After conviction and prior to sentence and as part of the presentence investigation authorized by K.S.A. 21-6703, and amendments thereto, or for crimes committed on or after July 1, 1993, a presentence investigation report as provided in K.S.A. 21-6813, and amendments thereto, the trial judge may order the defendant committed to the state security hospital for mental examination, evaluation and report. A report of the examination and evaluation shall be furnished by the chief medical officer to the judge and shall be made available to the prosecuting attorney and counsel for the defendant. A defendant may not be detained for more than 120 days under a commitment made under this section."

8

The district court initially granted Bowser's motion for a presentence mental evaluation at Larned State Hospital. But eight months later, after Bowser violated the conditions of his bond and was returned to custody, the district court vacated the order and proceeded to sentencing without a mental evaluation. The district court imposed the standard presumptive sentence of 39 months' imprisonment.

Turning to whether the district court abused its discretion, Bowser claims the court acted based on a mistake of fact because there was no change in the facts, nobody requested to have the order rescinded, and because he met his burden for a mental evaluation under K.S.A. 22-3429. But this argument ignores the fact that the circumstances changed after the district court initially ordered the mental evaluation. Bowser violated his bond conditions and eight months had passed without space opening at the hospital. Thus, the record contradicts Bowser's claim that there was no change in the facts. And while Bowser successfully convinced the district court to initially grant his motion for a mental evaluation, he does not show that the court was then barred from changing its mind. As he concedes, K.S.A. 22-3429 provides that a court "may" order a mental examination. Nothing in the statute requires it to do so.

For that same reason, the district court did not act based on a mistake of law. Bowser cites to cases where the Kansas appellate courts found that other defendants failed to meet their burden to show they were entitled to a mental evaluation. See, e.g., *State v. Johnston*, No. 95,703, 2007 WL 1529678, at *1 (Kan. App. 2007) (unpublished opinion). He relies on those cases to argue that his situation is distinguishable because he initially convinced the district court to grant his motion for a mental evaluation. But none of the cases cited by Bowser suggest that a district court must grant a mental evaluation if a defendant meets a set burden of proof. As explained above, such an argument contradicts the plain language in K.S.A. 22-3429 that a district court "may" order an evaluation. And there is no language in the statute that prevents the district court from rescinding an order for a mental evaluation based on changed circumstances.

That leaves only whether the district court acted arbitrarily or unreasonably. Bowser claims that the district court's decision was based solely on the long wait time at the hospital, which he declares without support is arbitrary and unreasonable. But this argument ignores that he had also violated his bond conditions and was returned to custody. At that point, the district court exercised its discretion to find that the better option moving forward was to sentence Bowser and bring finality to this case. The district court's decision was not arbitrary or unreasonable. In sum, Bowser has not met his burden to show that the district court's decision was based on a mistake of fact or law or was arbitrary or unreasonable. The district court did not abuse its discretion.

Turning to Bowser's due process claim, he does not explain where he made this argument below. This court will generally not review a constitutional claim raised for the first time on appeal absent a showing that an exception to the preservation requirement applies. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). Bowser does not argue that any exceptions apply. Thus, he has failed to preserve his due process claim.

In any event, Bowser's due process claim lacks merit. He argues that "[i]n failing to allow [him] to obtain a mental health evaluation despite demonstrating need in his motion . . . the court denied [him] his statutory and constitutional rights." Bowser's argument boils down to the same common core as above—that once he met a burden to show that he needed a mental evaluation, the district court could not change its mind. But the plain language of K.S.A. 22-3429 refutes Bowser's claim. The statute also does not provide Bowser any added level of due process. After the district court revoked Bowser's bond, it told the parties that it was reconsidering its order for an evaluation and told them to "be prepared for sentencing" the following week. The district court heard from counsel at sentencing before rescinding its order for an evaluation. Bowser does not show through argument or citation that he was entitled to any greater level of due process.

Affirmed.

10